FRED W. SMITH AND GRACE HOBSON SMITH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50113. Filed October 27, 1955.

*Harrison Harkins, Esq.*, for the petitioners.
*Thomas J. Sullivan, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in income tax against petitioners, husband and wife, in the amount of $27,071.87 for the year 1948. All of the facts have been stipulated; they are rather complicated, but a simplified summary will be sufficient to bring into focus the only question for decision.

A. L. Hobson, the father of Grace Hobson Smith, died in 1929. By his will he created certain trusts, naming petitioners as cotrustees in each of them. The sole income beneficiary of one of them, the Aliso-Ross-Hill Ranches Trust (referred to hereinafter as the Aliso trust), was his daughter, Grace Hobson Smith, one of the petitioners in this proceeding. A fiduciary income tax return for this trust for 1948 was filed by petitioners as trustees on Form 1041 in March 1949, reporting a net loss from the operation of business in the amount of $34,524.73 as "distributable" to the beneficiary.

Another trust established by the will was created out of the residue of the estate and is referred to as the A. L. Hobson Residue Estate, or the residue trust. It provided for distribution of income in a specified manner: (a) 10 per cent to petitioners, as trustees, for certain eleemosynary purposes; (b) 45 per cent to decedent's widow, with provisions for other disposition in the event of her death; and (c) the remaining 45 per cent to pay annuities for life to 5 persons, and the remainder to Grace Hobson Smith. During 1948 the residue trust realized a total of $252,859.77 ordinary net income and $21,660.24 long-term capital gain. The widow had died some years prior thereto, and her 45 per cent share was distributable in its entirety to Grace Hobson Smith. Also, 4 of the 5 annuitants had died prior to 1948, and, as a result, only $1,200 out of the remaining 45 per cent was payable to someone other than Grace Hobson Smith. In March 1948, petitioners filed certain partnership and fiduciary returns, in connection with the foregoing, which are described in the margin.[1]

In petitioners' joint individual income tax returns for 1948, also filed in March 1949, there was reported, in addition to certain long-

---

[1] They filed, first, a partnership return on Form 1065 as co-trustees of the A. L. Hobson Residue Trust, reporting ordinary net income of $252,859.77 and net long-term capital gain of $21,660.24, shown to be distributable as follows:

term capital gains, "Income from Partnerships and Trusts" as follows:

| | |
|---|---|
| Aliso-Ross-Hill Ranches Trust | [1] ($34,612.23) |
| A. L. Hobson Estate Trust | 112,586.89 |
| A. L. Hobson Residue Estate | 113,786.90 |
| Grace Hobson Smith—separate | $191,761.56 |

[1] The loss as reported in the return of the Aliso-Ross-Hill Ranches Trust was $34,524.73 ($34,612.23 less a net taxable capital gain of $87.50 from sale of a horse and scrap iron).

The deficiency notice for 1948 was mailed to petitioners on June 10, 1953. The deficiency resulted from the respondent's determination that the net operating loss of the Aliso trust could not be used to offset the income distributable to Grace Hobson Smith which had its source in the residue trust.

After receiving the deficiency notice, but prior to filing their petition herein, the petitioners, as co-trustees of trusts created by A. L. Hobson undertook to file an "Amended" return on Form 1041 for 1948, in which the operations of the Aliso trust were consolidated with those of the residue estate, with the result that the net income ultimately shown on the return reflected the net loss of the Aliso trust.

The Government contends that the income payable to Grace Hobson Smith from the trust or trusts created out of the residue are taxable to her under section 162 (b) of the Internal Revenue Code of 1939,[2] and that there is no provision of the Code under which the loss of the Aliso trust can be offset against such income. Apart from the effect of a regulation, to be considered shortly, petitioners do not challenge the Government's position.

Under our tax law, a trust is a separate juristic entity, and its income and deductions are not consolidated with those of other trusts or

| Distributee | Per cent | Ordinary net income | Long-term capital gain |
|---|---|---|---|
| A. L. Hobson Trust Fund | 10 | $25,285.98 | $2,166.02 |
| Grace Hobson Smith | 45 | 113,786.90 | 9,747.11 |
| A. L. Hobson Estate Trust | 45 | 113,786.89 | 9,747.11 |
| Totals | | $252,859.77 | $21,660.24 |

The first 45 per cent listed above represents the interest originally allocable to the decedent's widow, and the second 45 per cent represents the interest out of which the five annuities with remainders to Grace Hobson Smith were to be paid.

Petitioners also filed at that time two other returns for 1948, as trustees, each on Form 1041: one for the "A. L. Hobson Trust Fund," and the other for the "A. L. Hobson Estate Trust." On the return for the latter, $112,586.89 out of a total of $113,786.89 ordinary income was reported as distributable to Grace Hobson Smith and the remaining $1,200 to the last surviving annuitant.

[2] SEC. 162 (b). There shall be allowed as an additional deduction in computing the net income of the * * * trust the amount of the income of the * * * trust for its taxable year which is to be distributed currently by the fiduciary to the * * * beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the * * * beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the * * * trust which, within the taxable year, becomes payable to the * * * beneficiary. * * *

entities. Cf. *U. S. Trust Co.* v. *Commissioner*, 296 U. S. 481. Thus, even where there is the same beneficiary of two separate trusts created by the same grantor, the losses of one may not be offset against the income of the other. Such is the square holding of *Gertrude Thompson*, 40 B. T. A. 891.

Petitioner seeks to overcome the effect of the foregoing by reliance upon section 29.142–3 of Regulations 111, which provides:

RETURNS IN CASE OF TWO TRUSTS.—In the case of two or more trusts the income of which is taxable to the beneficiaries, which were created by the same person and for which the same trustee acts, the trustee shall make a single return on Form 1041 for all such trusts, notwithstanding that they may arise from different instruments. If, however, one person acts as trustee for trusts created by different persons for the benefit of the same beneficiary, he shall make a return on Form 1041 for each trust separately.

We cannot agree that this regulation effectively neutralizes the general rule required by the Code and applied in the *Thompson* case that the losses of one trust may not be used by the beneficiary to offset income distributable by another trust.

Although the regulation has been in existence a long time,[3] its purpose and scope are shrouded in obscurity. It will be noted that the regulation, in terms, deals only with the *return* to be filed by the fiduciary; it does not undertake to spell out the tax consequences of that return to the beneficiary. If petitioners' version of the regulation were adopted, unusual results would follow that could not possibly be justified under the statute. Suppose that the same grantor created two trusts naming the same trustees but with different beneficiaries, and suppose further that one trust realized distributable income in a given amount but that the other trust sustained a net loss in the same amount. In such situation, if the regulation were applied as contended for petitioners, the beneficiary of the profitable trust would have no taxable income to report therefrom, even though his trust in fact earned income that was actually distributed to him. He would thus obtain the benefit of a loss sustained by a trust in which he had no interest whatever. We cannot believe that Congress intended any such bizarre result. Again, if petitioners' position is correct, there would be only one exemption for several trusts created by the same grantor where the same trustees are named; yet the statute plainly gives a separate exemption for each trust, and the Commissioner would be wholly powerless to deprive the trusts of such exemptions, whether he attempted to do so by regulation or otherwise.

---

[3] See art. 423, Regs. 45; art. 423, Regs. 62; art. 423, Regs. 65; art. 423, Regs. 69; art. 743, Regs. 74; art. 743, Regs. 77; art. 142–3, Regs. 86; art. 142–3, Regs. 94; art. 142–3, Regs. 101; sec. 19.142–3, Regs. 103; sec. 29.142–3, Regs. 111; sec. 39.142–3, Regs. 118. See also sec. 7807, I. R. C. 1954; T. D. 6091, 1954–2 C. B. 47.

Petitioners rely upon the fact that the regulation has been in effect over a number of years and that the applicable statute has been re-enacted a number of times during that period. We would ordinarily be very slow to put aside such a regulation, where there has been an administrative history showing that the regulation had been applied consistently over the years to cases comparable to the one before the Court. However, we have no way of knowing whether such is the situation here. By its terms, the regulation does not specifically call for the result upon which petitioners insist, and the respondent explains its purpose so as not to require that result. Respondent argues that the regulation was intended to cover only those situations in which *all* the income of the various trusts was distributable, thereby, in effect, rendering the trustees' returns merely information returns without affecting the substantive rights or obligations of the distributees. Whether we accept or reject respondent's explanation, there is nothing before us to show that the regulation had ever been applied in the manner contended for by petitioner. The only reference supplied to us by counsel bearing upon the administrative history of the regulation is a 1936 letter signed by a section chief on behalf of a deputy commissioner, which appears in one of the tax services,[4] but which has no relevance to the problem before us.

In the circumstances, we cannot say that we have any long continued, or even any administrative practice with respect to the point in issue. And since the application of the regulation in accordance with petitioners' position would, in our judgment, be contrary to the statute, we hold that the loss of the Aliso trust may not be used by Grace Hobson Smith to offset income distributable to her from the residue estate.

*Decision will be entered under Rule 50.*