**WEST VIRGINIA NORTHERN RAILROAD COMPANY, a corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 8087.

United States Court of Appeals
Fourth Circuit.

Argued June 7, 1960.

Decided Sept. 19, 1960.

Edwin S. Henry, Jr., Philadelphia, Pa. (Saul, Ewing, Remick & Saul, Philadelphia, Pa., on brief), for petitioner.

William A. Friedlander, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOPER and HAYNSWORTH, Circuit Judges, and CHARLES F. PAUL, District Judge.

SOPER, Circuit Judge.

In this case review of the decision of the Tax Court is sought, wherein the court upheld the determination of the Commissioner of Internal Revenue of deficiencies in the income tax returns of West Virginia Northern Railroad Company for the years 1951, 1952, and 1953 in the respective amounts of $11,355.42, $20,035.93, and $13,718.66.

The taxpayer railroad company operates eleven miles of track between Kingwood and Tunnelton, West Virginia, as a feeder of the B. & O. Railroad Company. The stock of the corporation, amounting to 1,000 shares, was owned in 1951 and prior years by James Jenkins and his four children, 600 shares by him

and 100 shares each by a son and three daughters. The Jenkins family also owned two diesel locomotives which, on June 14, 1946, they had leased to the railroad for five years at a haulage rental of 7½ cents per ton. These locomotives furnished the sole motive power of the railroad. The family also owned 2,500 acres of coal land in Preston County, West Virginia.

On December 30, 1950, the Jenkins family granted two options to the Preston Coal Company exercisable on or before July 1, 1951. The first option provided that the coal company might purchase all of the stock of the railroad company for $500,000 of which $50,000 should be paid in cash and the balance in fifteen annual instalments. The option also provided that in the event of exercise the purchaser would take a twenty-five year extension of the locomotives lease at the 7½ cents per ton rate and that there would be no adverse change in the taxpayer's balance sheet and no change in the capital structure during the option period. This option, however, was subject to the condition that the coal company would also exercise the second option whereby it acquired the right to purchase the coal land for $50 per acre or, in the alternative, to lease the property at a royalty of 10 cents per ton mined and sold, with a minimum royalty of $30,000 per year. On March 19, 1951, the coal company assigned its rights in these options to Ralph R. Lewis and Lewis, on or before July 1, 1951 notified the Jenkinses of his intent to exercise both options.

Thereafter the transactions occurred which gave rise to the present controversy. James Jenkins was dissatisfied with the terms of the option agreements and so notified Walter Biddle Saul, the attorney for Lewis. He was disturbed by the provision of the agreements that the stock was to be turned over to Lewis upon the payment of only $50,000 without any note or any security for the payment of the instalments, and with nothing in the agreements to prohibit the buyer from distributing the surplus of the corporation to himself even though the stock had not been paid for in full. Accordingly, the agreements were altered to meet these objections. A note was given for the purchase price of the stock and the stock was deposited as collateral for the payment of the note and it was agreed that there would be no increases in the salaries paid to the officers of the corporation and no dividends declared unless they were paid out of income earned after the sale of the stock. In addition, there was added a provision to the effect that the rental to be paid by the corporation for the locomotives should be fixed at 12½ cents instead of 7½ cents per ton, as contemplated in the original agreement, and that the additional 5 cents per ton should be credited against any instalment payment due by Lewis on the purchase price of the stock of the railroad, and if no instalment was due then the additional 5 cents per ton should be credited against the minimum royalty due by Lewis under the lease of the coal lands. Thereafter, in September 1951, and in each following month, the taxpayer rendered statements to members of the Jenkins family showing the number of tons shipped over the line and, in addition, the amount due them on account thereof and the portion attributable to the 5 cents per ton increase. For the years in question the following sums were thus received or accrued by the Jenkins family:

| Taxable Year | Amount at 7½ cent rate | Amount at 5 cent rate |
|---|---|---|
| 1951 | $53,500.56 | $19,982.40 |
| 1952 | 56,170.83 | 36,407.94 |
| 1953 | 45,965.20 | 29,590.43 |

The amounts represented by the 5 cents per ton factor during each of these years were credited against the instalment due from Lewis on his note in connection with the stock purchase.

The taxpayer on its federal income tax returns for these years deducted the full amount of the payments made at the 12½ cents rate as rent for the locomotives, but the Commissioner disallowed that portion of the payments which rep-

resented the additional 5 cents per ton. Consequently, the question to be decided is whether the additional sum of 5 cents per ton should be deducted from the taxpayer's income as an ordinary and necessary expense of operation of the railroad or should be considered as a payment by Lewis on account of the purchase price of the railroad company's stock.

The taxpayer contends that it is clearly entitled to deduct the entire 12½ cents per ton charge from its gross income under the provisions of § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A), which permits the deduction of all the ordinary and necessary expenses paid or incurred by a taxpayer in the taxable year in carrying on a trade or business. It is pointed out that the two locomotives constituted all the motive power available to the railroad and that it was conceded at the trial below that the rental of 12½ cents per ton of coal carried was a reasonable charge for this service. Hence it is said that the deductible character of the expenditure is clearly established.

The argument is not without force if attention is confined to the facts which it recites; but these constitute only a part of the picture. The modified agreements did indeed provide that the additional 5 cents per ton should be paid as rent for the use of the locomotives, and it was actually paid into the hands of Jenkins and his children in equal shares;[1] but it was stipulated that the payments should be credited upon the purchase price of the stock, and this was actually done. In other words, the additional sum was not applied by the Jenkinses to the payment of a debt due them by the railroad company in its corporate capacity but to the payment of a debt due them by Lewis in his individual capacity.

In effect, a portion of the earnings of the railroad was pledged to the former stockholders of the taxpayer corporation so as to support Lewis's obligation to pay them for their holdings.

Accordingly, we think there was ample ground for the finding of the Tax Court that the increase in the rental did not constitute an ordinary and necessary expense of the taxpayer corporation but was rather a device for the payment of an obligation of Lewis. It is well settled that in matters of taxation substance rather than form prevails and that the taxability of a transaction is determined by its true nature rather than by the name which the parties may use in describing it. Thus in Beus v. Commissioner of Int. Rev., 9 Cir., 261 F.2d 176, the deduction of so-called rental payments under a farm lease with option to buy was disallowed when it appeared that the payments were actually made as part of the purchase price of an interest in the property; in Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, payments of so-called "guaranteed dividends on guaranteed stock" by a corporation were held to be deductible since it was shown that the sums paid were in truth interest on a corporate debt, the court stating that the question was to be decided not by the names used by the parties to describe the transaction but by the nature and incidents of their rights in the stock; and in Brush-Moore Newspapers, Inc. v. Commissioner of Int. Rev., 6 Cir., 95 F.2d 900, deduction of payments by a corporation which were described as salary for services was denied when it was found that the payments were part of the purchase price of corporate stock. For like reasons the decision of the Tax Court in the pending case will be affirmed.

Affirmed.

[1] The record is not entirely clear as to whether the locomotives belonged to Jenkins and his four children or solely to the children. The lease of June 14, 1946, was signed by the four children as lessors and by the father as president of the lessee corporation. The modifying agreement of September 24, 1951, on the other hand, named the five as the owners of the locomotives. It was stipulated by the parties, however, that the locomotives belonged to the four children, and yet the additional rental of 5 cents per ton was divided equally among the five. The only explanation offered was that the Jenkins family wanted it done that way.