**Eunice P. BOYCE, Trustee,**

v.

**UNITED STATES of America.**

**Civ. A. No. 5622.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Feb. 15, 1961.

Simon Herold, Shreveport, La., for plaintiff.

Charles K. Rice, Asst..Atty. Gen., U. S. Dept. of Justice, James P. Garland, Myron C. Baum, Bernard J. Schoenberg, Attys., Dept. of Justice, Washington, D. C., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for the United States.

BEN C. DAWKINS, Jr., Chief Judge.

Brought under authority of 28 U.S.C. § 1346(a) (1), the action is for recovery of income taxes and interest alleged to have been unlawfully assessed and collected.

On February 28, 1945, Dr. S. W. Boyce, of Shreveport, Louisiana, executed 90 trust indentures, designating his son, S. W. Boyce, Jr., as sole beneficiary, and his son's father-in-law, Albert H. Bartschmid, as trustee. All of the indentures were identical in language, and were numbered consecutively, A–1 through A–50, B–1 through B–10, C–1 through C–10, and D–1 through D–20.

On the same day, the settlor gave the trustee his ninety checks, payable to the trustee, in the total sum of $17,740. Fifty of these checks, in the sum of $300 each, was numbered A–1 through A–50; ten in the sum of $37 each were numbered B–1 through B–10; ten were numbered C–1 through C–10, for $37 each; and twenty, in the sum of $100 each, were numbered D–1 through D–20.

On the same day, February 28, 1945, Bartschmid gave Dr. Boyce ninety checks drawn on his account as trustee, (which had not yet been opened,) in the Commercial National Bank in Shreveport, in the same amounts, and bearing the same designations as those given by the settlor to the trustee. The next day, March 1, 1945, in consideration of the $17,740 in checks given him by the trustee the day before, Dr. Boyce conveyed title to the trustee, for the benefit of the ninety trusts, to two rental dwelling houses, his medical clinic building, and all equipment and fixtures located therein, this property having an actual value at the time of at least $28,300.

Immediately after title thus was conveyed to the trustee, on March 1, 1945, he leased the clinic building to Dr. Boyce, the settlor, for $400 per month. Bartschmid then resigned as trustee, and, pursuant to the power reserved to him in the trust indentures, on March 1, 1945, Dr. Boyce appointed his wife, Mrs. Eunice P. Boyce, mother of the beneficiary, as successor trustee, she having accepted the appointment simultaneously.

Nearly a month after Bartschmid had resigned as trustee, on March 31, 1945, the trusteeship account was opened at the Commercial National Bank, wherein $600 received by Bartschmid from Dr. Boyce as rental on the clinic building and equipment, was deposited. Still later, on April 25, 1945, Bartschmid endorsed and deposited in this account the ninety checks given him by Dr. Boyce on February 28, 1945. Apparently on the same day, the Doctor cashed the checks Bartschmid had given him for the trust properties.

During the years 1945, 1946, 1947 and 1948, Mrs. Boyce, as trustee, accumulated all income produced by the trust properties and deposited it into the single bank account. On June 20, 1946, she made a distribution of trust income to the beneficiary by issuing ninety separate checks on the single account, totaling $4,000, each check numbered according to the respective trusts. This, however, was the last time during the period involved that the trust accounts were segregated or handled separately. Thereafter, on December 24, 1946, as trustee, she drew one check in her own favor in the lump sum of $7,800 and placed this in her safe deposit box. Again, on December 29, 1947, she drew another check on the account in the same manner, in the sum of $6,000, which likewise was put in the deposit box; and both of these checks later were given to S. W. Boyce, Jr., as sole beneficiary.

No income tax returns were filed by Mrs. Boyce, as trustee, during the four years in question. After an investigation and audit, the Commissioner of Internal Revenue, in August, 1951, assessed the following deficiencies, including interest, against the trustee:

| | |
|---|---|
| 1945 ......... | $ 1,612.94 |
| 1946 ......... | 1,390.05 |
| 1947 ......... | 1,594.71 |
| 1948 ......... | 1,265.19 |
| Total | $ 5,862.89 |

These assessments were paid on August 30, 1951, and on August 24, 1953, the trustee filed timely claims for refund which were disallowed on August 9, 1954. This suit, seeking recovery of the amounts thus paid, plus interest, was filed on August 3, 1956. By request of counsel, it was removed from a trial calendar in October, 1957, and remained dormant until it was submitted on a stipulation of facts entered on July 1, 1960, briefs being filed thereafter.

The parties have stipulated that if only one taxable entity—instead of ninety—actually was created by what was done, plaintiff, as trustee, was liable for the taxes and interest assessed against her for the years 1945–48. They have further stipulated that the sole purpose in attempting to create ninety trusts, instead of one, was to avoid income taxes by dividing the income from the trust properties into ninety parts, so that each part would be exempt from tax liability.[1]

---

1. Internal Revenue Code of 1939:

"Sec. 142 [as amended by Sec. 11(c), Individual Income Tax Act of 1944, c. 210. 58 Stat. 241]. Fiduciary returns.

"(a) Requirement of return.—Every fiduciary * * * shall make under oath a return for any of the following * * trusts for which he acts, * * *

* * * * *

"(3) Every trust the net income of which for the taxable year is $100 or over, or the gross income of which for the taxable year is $500 or over, regardless of the amount of net income; * *.

* * * * *

"Sec. 163 [as amended by Sec. 102(b)(6), Revenue Act of 1945, c. 453, 59 Stat. 559]. Credits against net income.

"(a) Credits of estate or trust.—

"(1) For the purpose of the normal tax and the surtax, an estate shall be allowed, in lieu of the exemptions under

Plaintiff contends that ninety separate trusts were intended to be established by the settlor, and that he had the legal right to do so in order to reduce the amount of taxes to be paid on the income from the trust properties. She argues that recent decisions have held that, where separate trusts are created by one settlor for a single beneficiary, they must be taxed as separate entities; that these rulings have been considered by Congress and attempts made to pass legislation that would close the tax loophole; and that since such legislation has not been enacted, the loophole remains and plaintiff legally has taken advantage of it.

The Government argues that form must always yield to substance in tax matters, so that if a taxpayer actually has not done what he purported to do, he will be taxed on what he actually did, or if he had no legitimate business purpose and only had tax avoidance in mind, he will be taxed regardless of the form employed to avoid the taxes. It further argues that, since the admitted purpose of creating ninety separate trusts was to avoid the fairly heavy taxes which otherwise would have been incurred, the "business purpose" doctrine should be called into application, the form of these transactions ignored, and the multiple trusts treated as one taxable entity. As a corollary argument, it urges that the obvious intent of the statute—to tax in some way the whole income of trust estates—would be violated if the taxpayer is permitted to avoid payment of these taxes.

Plaintiff counters by arguing that the "business purpose" rule has never been applied to trusts because a business purpose is entirely foreign to the vast majority of family trusts, which usually are mere gratuities with no business purpose. She further argues that multiple trusts have been in existence for many years,

resulting in large losses of tax revenues, about which Congress has done nothing; and that if the "business purpose" doctrine properly was applicable here, it would have been urged and so applied prior to this litigation.

Turning now to the authorities cited by the parties, and considering first those relied on by plaintiff, it has been held that even though the sole purpose of creating separate trusts was to achieve a reduction in the tax upon the income of trust property, this would not transgress any right of the Government. Commissioner of Internal Revenue v. McIlvaine, 7 Cir., 1935, 78 F.2d 787, 102 A.L.R. 252, affirmed 296 U.S. 488, 56 S.Ct. 332, 80 L.Ed. 345; United States Trust Co. of New York v. Commissioner, 1936, 296 U.S. 481, 56 S.Ct. 329, 80 L.Ed. 340. In those cases, however, while the same trustee or trustees served for each trust, there were *separate* beneficiaries, and *separate* accounts were maintained for each trust, the Court having also held that an undivided interest in property may constitute the corpus of a trust.

In MacManus v. Commissioner, 6 Cir., 1942, 131 F.2d 670, there were four trusts (originally six), with four *separate* beneficiaries (originally six), but the same trustee, who set up a single capital account, and filed one fiduciary return, listing the four beneficiaries as each having a 25% share in the income. The Court there ruled that the mere fact that the trusts were kept in one fund did not defeat the settlor's intention that the trusts be separate, with each beneficiary having an undivided interest in the single account. Again, we note, there were four *separate* beneficiaries of the *separate* trusts.

McHarg v. Fitzpatrick, 2 Cir., 1954, 210 F.2d 792, 794, also involved three *separate* trusts, with the same trustee, but with three *separate* beneficiaries.

section 25(b) (1), a credit of $500 against net income, and a trust shall be allowed, in lieu of the exemptions under section 25(b) (1), a credit of $100 against net income." (Sections 142 and 163 were amended by Section 202(c) (2)

and (d), respectively, Revenue Act of 1948, c. 168, 62 Stat. 110, 26 U.S.C. §§ 142, 163, to change $500 to $600, effective for taxable years beginning December 31, 1947.)

Following United States Trust Co. of New York v. Commissioner, the Court, speaking through Judge Learned Hand, held that there may be separate trusts, although the trustee is the same and the *res* in each is a separate undivided interest in the same mass of real and personal property. As to the settlor's understanding of the legal effect of what he was doing, or his purpose in doing it, the Court said:

"* * * whatever may be the proper differentia to determine whether there are one, or several, trusts, it would be anomalous to make any part of it the settlor's understanding of the legal effect of what he was doing—or his purpose in doing it. It would of course be quite untrue—especially in the field of torts—to say that a man's purpose can never be a determinant of his civil liabilities; but, so far as we can recall, it is never a measure of his public duties. *Income taxes are imposed upon persons because of what they receive from property held by them, or for their benefit; and it cannot be permissible to make them turn, either upon what rights the settlor supposed he had created, or what rights he may have wished to create, but did not.* * * *" (Emphasis supplied.)

In Kohtz Family Trust v. Commissioner, 1945, 5 T.C. 554, it was held that failure of the trustee to make a physical division of the trust assets does not militate against the conclusion that there are separate trusts, the *res* of each of which is an undivided interest in the common fund, citing United States Trust Co. of New York v. Commissioner. Again, however, as in the cases previously discussed, the separate trusts were for the benefit of *separate* beneficiaries, in this instance three.

Gertrude Thompson v. Commissioner, 40 B.T.A. 891, involved a situation where petitioner was claiming that two trusts, of which she was beneficiary, should be grouped together, and treated as one entity, in order to deduct expenses of one trust from income from the other. The Board refused to allow this, pointing out that petitioner did not dispute that two separate trusts were created by the will, and a codicil to it, made by her deceased husband. It should be noted that there were only two—not ninety—trusts in question, and that there was no apparent motive of tax avoidance in their creation. Moreover, petitioner's sole motive in attempting to group them together was to avoid taxes.

In Fred W. Smith et al. v. Commissioner, 25 T.C. 143, there was a similar situation, where Grace Smith was a sole beneficiary of one trust and a joint beneficiary of another. She attempted to offset a loss by one trust against income from the other. The Tax Court, following Gertrude Thompson, and for the same reasons, disallowed this action.

In brief, plaintiff quotes extensively from Vol. 4, Prentice-Hall, PP 32057, Federal Taxes, and from Ervin, Multiple Accumulative Trusts and Related Problems under the Income Tax, 29 So.Calif. L.Rev., to the effect that there are no tax or local law limitations on the number of accumulative trusts an individual can create for a single beneficiary; that this is a tax loophole which validly may be used.

For its part, as noted above, the Government relies upon the basic rule in tax matters that form must yield to substance; that it is not what the parties purported to have done, but what they actually did, which is determinative of tax liability. In weighing the facts, and applying the law to them, it is said, the Courts must not proceed mechanically, but must bear ever in mind the manifest purpose of the tax laws to tax income. In support of these propositions, it cites the following authorities.

Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 267, 79 L.Ed. 596, involved a purported corporate "reorganization," wherein certain shares of stock were transferred from petitioner's wholly-owned corporation to a new corporation and thence to petitioner who immediately sold the shares, the new corpora-

tion then being dissolved without transacting any other business. Petitioner attempted to treat her profit from the sale of the shares as capital gain, rather than as ordinary income, whereas the Commissioner argued that the "reorganization" was without substance and that the profit should be treated as if petitioner had received a dividend. In upholding the Commissioner, the Supreme Court said:

"* * * The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. * * *

"When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made 'in pursuance of a plan of reorganization' [§ 112(g)] of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. * * *

"* * * The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose."

In Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, 357, 84 L.Ed. 406, the taxpayer, Smith, owned all of the stock of Innisfail Corporation, with which he purported to have many securities transactions, as the result of which there was a book indebtedness owed by him to the corporation amounting to nearly $70,000. On December 29, 1932, Smith sold to the corporation, in partial payment of his indebtedness to it, a number of shares of stock at a price less than he had paid for them. He then attempted to deduct as a loss the difference between his cost and the sale price he received from his wholly-owned corporation. The Supreme Court held:

"The Government urges that the principle underlying Gregory v. Helvering finds expression in the rule calling for a realistic approach to tax situations. As so broad and unchallenged a principle furnishes only a general direction, it is of little value in the solution of tax problems. If, on the other hand, the Gregory case is viewed as a precedent for the disregard of a transfer of assets without a business purpose but solely to reduce tax liability, it gives support to the natural conclusion that transactions, which do not vary control or change the flow of economic benefits, are to be dismissed from consideration. There is no illusion about the payment of a tax exaction. Each tax, according to a legislative plan, raises funds to carry on government. The purpose here is to tax earnings and profits less expenses and losses. If one or the other factor in any calculation is unreal, it distorts the liability of the particular taxpayer to the detriment or advantage of the entire taxpaying group.

* * * * * *

"* * * The Government may not be required to acquiesce in the

taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property."

While it concedes that the "business purpose" doctrine has not yet been applied to family trusts, the Government cites the following cases as precedents demonstrating its application to a variety of other similar transactions: partnerships, Kocin v. United States, 2 Cir., 187 F.2d 707; corporate distributions, Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782; inter-family gifts, Gouldman v. Commissioner, 4 Cir., 165 F.2d 686; and sales, Shaffer Terminals, Inc., v. Commissioner, 9 Cir., 194 F.2d 539. As was stated in Weller v. Commissioner, 3 Cir., 270 F.2d 294, 297:

> " * * * the principle laid down in the Gregory case is not limited to corporate reorganizations, but rather applies to the federal taxing statutes generally. The words of these statutes which describe commercial transactions are to be understood to refer to transactions entered upon for commercial purposes and 'not to include transactions entered upon for no other motive but to escape taxation.'" Citing Commissioner of Internal Revenue v. Transport Trading & Terminal Corp., 2 Cir., 1949, 176 F.2d 570, 572, certio-

rari denied 1950, 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 589.

In Morsman v. Commissioner, 8 Cir., 1937, 90 F.2d 18, 22, 113 A.L.R. 441, the taxpayer executed a trust indenture on January 28, 1929, in which he designated himself as both trustee and beneficiary, with a proviso that U. S. Trust Company was to become successor trustee at his will but no later than January 1, 1939. Between January 28 and May 3, 1929, taxpayer sold several hundred shares of stock, and on the latter date turned over all of the funds to the Trust Company. He did not report his profits from the stock sales in his return for 1929. In holding him personally liable, the Court said:

> " * * * The question is whether or not the petitioner has properly manifested an intention to establish a fiduciary relationship in which there were imposed upon him as trustee some enforceable duty with respect to the securities sold by him prior to May 3, 1929. * * * It is true that a legal transaction will not be denied its intended effect though an underlying motive may have been the evasion of taxes. * * * But the transaction may always be scrutinized to see whether it is in reality what it appears to be. * * * Substance and not form should control in the application of tax laws. * * * *When a taxpayer thus boldly proclaims that his intent, at least in part, in attempting to create a trust is to evade taxes, the court should examine the forms used by him for the accomplishment of his purpose with particular care; and, if his ingenuity fails at any point, the court should not lend him its aid by resolving doubts in his favor.*" (Emphasis supplied.)

■ Our own independent research has uncovered some support [2] for plain-

2. In Taxes, The Tax Magazine, Vol. 36, No. 8, p. 588, Aug., 1958, published by the Commerce Clearing House, an article entitled "Effective Use of Multiple Trusts," authored by Joel I. Friedman and Henry L. Wheller, Jr., discusses the various uses, advantages and techniques of multiple trusts. In analyzing such benefits, it is stated that:

"Multiple trusts are also used to minimize capital gains taxes. Capital gains which are currently distributable

tiff's position among some legal writers. However, in addition to the authorities cited and relied on by the Government, we note that the courts again have held recently that the taxability of a transaction is determined by its true nature rather than the form used by the parties in fashioning or describing it. West Virginia Northern R. Co. v. Commissioner of Internal Revenue, 4 Cir., 1960, 282 F.2d 63. This does not involve the "business purpose" doctrine, but simply whether the transaction actually is what the parties purport it to be. For example, in Belcher v. Commissioner of Internal Revenue, 5 Cir., 1947, 162 F.2d 974, 976, certiorari denied 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 399, the Court struck down a family partnership because it was not in substance a true partnership. There was no question there of a "business purpose" but simply whether the necessary elements of a family partnership were present. The Court said:

"Notwithstanding the fact that there is no Federal statute which makes the gift of a partnership interest to a member of the taxpayer's family illegal, or that expressly lays the tax upon a husband or father

to the beneficiaries and are not actually distributed to them are taxable to the trust. Where substantial capital gains are realized by a single trust, the trust may be required to pay taxes at the 25 per cent maximum rate applicable to long-term capital gains, even though there is no other income taxable to the trust. By having the capital gains realized by a number of trusts, the tax will be substantially reduced. Where the trusts are created with assets which have substantially appreciated in value, the income tax saving can be impressive.[14]

"14. At hearings before the Joint Committee on Tax Evasion and Avoidance, 75th Cong., 1st Sess. (1937), it appeared that one family had saved about $530,000 in capital gains taxes by transfer of appreciated assets to 64 trusts for four beneficiaries."

The authors, in discussing the legislative history and current developments, point out that:

"In 1937, hearings before the Joint Committee on Tax Evasion and Avoidance produced considerable evidence of the use of multiple trusts as a tax avoidance device, but the hearings did not result in any legislation with respect to multiple trusts, except that the personal exemption was denied to trusts which accumulate their income.

* * * * *

"Thereafter Congress and the Treasury Department appear to have given comparatively little attention to multiple trusts as a tax avoidance device, until in 1956 the problem was considered by the Mills subcommittee of the House Ways and Means Committee. Referring to multiple trusts, the subcommittee pointed out that cases have arisen 'where an individual in order to avoid the effect of higher individual income tax brackets has set up several, instead of one, accumulation trusts for gifts in trust to the same individual,' and the suggestion was made that 'solutions to this problem be examined by the subcommittee in connection with the study now in progress, of the tax treatment of estates and trusts.'

"Several months thereafter, in May, 1957, the advisory group studying Subchapter J (income of estates, trusts, beneficiaries and decedents) submitted a report, which it revised in November, 1957, proposing the enactment of a new section of the Code 'to prevent tax avoidance by the creation of multiple trust entities in the form of separate trusts to the extent the primary income * * or taxable income allocated to the corpus of each of the separate trusts are substantially the same.'

* * * * *

"Two trusts with one beneficiary.— Another example in the report illustrates a case where the new section would apply. The example describes two separate trusts, in both of which the trustee is given discretion to pay the income to the grantor's son or to accumulate it in the trust. On termination of the trust, the principal and accumulated income are to be paid to the son or his estate. The only differences between the two trusts are a one-day difference in the date of creation and a one-year difference in the date of termination. In both trusts, the grantor's son is the sole income beneficiary and the son or his estate the sole remainderman entitled to receive the principal and accumulated income.

"On these facts it would seem that *even under existing law, the separate trusts described in the example should be taxed as a single trust.* There are no adjudications on the point and the proposed codification is therefore desirable." (Emphasis supplied.)

who makes a lawful gift of a partnership interest to members of his family, and although it has long been, and is still, the law that a taxpayer has the right to avoid or lessen his taxes by means that are lawfully available, it is now well settled that such means must be realities, not shams, substance, not shadows. Family partnerships are not ipso facto illegal under Federal law but such partnerships must be shown to be accompanied by investment of capital, participation in management, rendition of services by the family partners, or by such other indicia as will definitely demonstrate the actuality, the reality, and the bona fides of the arrangement."

Similarly, where a settlor has received the benefit of a trust established by him, in that it either has discharged a legal obligation imposed upon him or he has ultimately received the income from the trust, the courts have disregarded form in favor of substance, without considering whether there was any business purpose involved and have treated income from such trusts as taxable to the settlor. Willcuts v. Douglas, 8 Cir., 1934, 73 F.2d 130, affirmed 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3; Kent v. United States, 1945, 60 F.Supp. 203, 103 Ct.Cl. 714.

And where family transactions are involved, they are subject to the same close scrutiny by the courts as is the case where tax avoidance is the sole motive of the transaction. Doll v. Commissioner of Internal Revenue, 8 Cir., 1945, 149 F.2d 239, certorari denied 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430; Losh v. Commissioner of Internal Revenue, 10 Cir., 1944, 145 F.2d 456; cf. Sun Properties, Inc. v. United States, 5 Cir., 1955, 220 F.2d 171; Yiannias v. Commissioner of Internal Revenue, 8 Cir., 1950, 180 F.2d 115.

█ Applying the rule of "close scrutiny" here, as we believe we must, we can reach no other conclusion than that this entire scheme is but a mockery of our tax laws. On its very face, the creation of ninety separate trusts for such a relatively small amount of property is preposterous. It flouts the statutory purpose of our laws. Straining reason and credulity, it ought to be struck down forthwith.

Even if there is such a large loophole in the law, as plaintiff contends, and which we seriously doubt in these circumstances, it is obvious on the facts that we are confronted with shams, not realities, shadows and not substance. This is so because of the treatment given to the allegedly separate trusts by the parties themselves, mother-trustee and son-beneficiary. All of the trust indentures required the trustee to keep accurate records of each trust separately. The trustee was permitted to invest all of the trust funds, in any amount, provided an accurate record was kept of that portion of the income belonging to each trust. In addition, the trustee had the duty of rendering an annual accounting to the beneficiary as to the status of each trust.

Surely, the burden of proving literal compliance with the terms of such a bizarre arrangement rested heavily upon plaintiff here. Neither she nor her son (who participated as counsel) produced any such records or accounts in evidence to prove that the trusts were separately maintained. Government counsel attempted to take the trustee's discovery deposition, but were advised that she could not testify because of a heart attack. Her son was questioned about records, and his answers were most evasive, argumentative and unsatisfactory. Although he mentioned reports from his mother, in the form of correspondence, none of these letters was produced or filed in evidence.

While the first distribution of trust income, on June 20, 1946, was made in keeping with the trust indentures, thereafter their requirements were ignored and they were treated as if there was only one trust. This is shown by the lump-sum checks drawn by the trustee on December 24, 1946, and December 29, 1947, later delivered to the beneficiary.

■ Their ingenuity having failed, this action and inaction by the parties to the trust clearly brings into play the ruling of the Eighth Circuit in Morsman v. Commissioner, supra [90 F.2d 22]:

" * * * When a taxpayer thus boldly proclaims that his intent, at least in part, in attempting to create a trust is to evade taxes, the court should examine the forms used by him for the accomplishment of his purpose with particular care; and, if his ingenuity fails at any point, the court should not lend him its aid by resolving doubts in his favor."

Finding, therefore, that substance must and does prevail over form, and that in truth there was only one trust here, it must bear the tax consequences flowing from the facts. For the reasons given, plaintiff's demands must be rejected.

Present decree accordingly.