243 So.2d 695

**The RUST ENGINEERING CO., a Corp.**

**v.**

**The STATE of Alabama.**

**3 Div. 401.**

Supreme Court of Alabama.

Feb. 4, 1971.

Engel & Smith, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Willard W. Livingston, Counsel, Dept. of Revenue and Asst. Atty. Gen., and William H. Burton, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for the State of Alabama.

PER CURIAM.

This is an appeal from a final decree of the Circuit Court of Montgomery County, In Equity, upholding the final assessment of deficiency sales tax in the total amount of $26,425.39, which was made by the State Department of Revenue against appellant in this cause.

This case arises out of a contract which appellant had with the State Docks Department of Alabama to construct an export grain elevator in Mobile, Alabama. The provisions of the contract will be hereinafter set out in detail.

There are thirteen Assignments of Error.

Most of the argument in brief is directed to the finding and ruling of the court that "The Appellant, as an independent contractor, and not as an agent for the State Docks Department purchased the materials, etc., which it used to perform the contract in this case, and is the person on whom the sales tax fell." (Assignments of Error 1, 2, 3, 4, 5, and 11) Three of the assignments are not argued, 6, 7, and 8.

Assignments of Error 12 and 13 are based on an objection to portions of a deposition, offered by appellee and the court's refusal to exclude the same. We

will consider these last two assignments. The deposition taken of J. B. Finley, the Secretary and Treasurer of Turner Supply Company of Mobile, Alabama, was offered by the state. Sales were made of the various items to Rust Engineering Company and delivered to the State Docks job. They were paid by the Rust Company for all of these sales. Thereafter, the witness was asked if any of the accounts for material sold by his company ever went bad. The objection to this question was overruled and the witness indicated that sales to Birmingham Maintenance and Mechanical Contractors, a subcontractor of Rust, failed to pay for purchases sold and delivered to it; also that the said subcontractor filed proceedings in voluntary bankruptcy. The witness, after filing its claim in the Bankruptcy Court, called one of the employees of the State Docks Department and requested payment of the account. It was refused.

Appellant made the objection to this part of the deposition that it was "incompetent, irrelevant and immaterial, and it is not shown that the materials furnished to were furnished on this particular contract. * *. The proper predicate has not been laid * * *." We hold the trial judge properly admitted the evidence and ruled without error in refusing to grant the motion to exclude. The sales company had sold and delivered the merchandise to the subcontractor. On receiving notice of the bankruptcy, a claim was filed. Thereafter, an effort was made to see if the State Docks Department would reimburse the supplier. Certainly, they knew where the goods were delivered. This was a collateral matter and no predicate was required. The evidence was clearly within the issues formulated by the pleadings. Moreover, the same, almost identical, evidence was offered in the second deposition. Deposition of Charlton M. Dukes was offered and read. He was the Secretary and Treasurer of a hardware dealer in Mobile. They had sold supplies to the Rust Company for use in the construction of the Docks proj-

ect. Rust had paid the supplier. The witness then stated his company sold supplies to Birmingham Maintenance and Mechanical Contractors. He was then asked about the bankruptcy proceedings of this subcontractor. Also, the following:

"Q Did you make a demand on the State Docks for the account?

"A Yes, I did but they wouldn't accept it.

"Q They would not pay it?

"A No."

Counsel for appellant then stated:

"* * * I object to this question on the grounds it is incompetent, irrelevant and immaterial and the proper predicate has not been laid, and it is not shown that this is an authorized account for this project."

The Court stated:

"Unless it is shown the Court sustains it."

There were further questions and remarks between counsel and the court stated further:

"I'm going to let you read it. But my ruling is this, it is connected with this project that I sustain his objection."

The deposition was finally accepted as evidence and appellant's counsel excepted.

This ruling is in no way made a part of this appeal. There is no assignment of error in any way presenting this ruling, and no argument relating to the reception of the deposition.

While we have indicated that the rulings of the court on the admissibility of the first deposition (Finley) was without error—but should it be assumed to be otherwise—it is harmless error for the trial court to exclude evidence when such evidence was admitted at another time and in another form. Supreme Court Rule 45.

*Assignment of Error 9.*

Assignment of Error 9 recites:

"9. The trial court erred in not holding that the original contract dated June 24, 1964, as well as all documents referred to on the face of the June 24, 1964, document, including the contract for Special Management Services dated July 8, 1964, constituted a part of the entire contract and must be construed together to ascertain and give effect to the intention of the parties."

This is another way of saying that the decree, holding to the contrary, was error. It will, therefore, be considered along with Assignments of Error 1 through 9 and 11.

*Assignment of Error 10.*

Assignment of Error 10 is quite lengthy. Essentially, it questions the sufficiency of the evidence in certain particular aspects to support the decree. All of these matters are considered in the decree here appealed from which is hereinafter set out and approved by us. No need, therefore, arises to further consider this assignment.

*Assignments of Error 1, 2, 3, 4, 5, 9, and 11.*

We here set out the final decree which reads as follows:

"FINAL DECREE

"This cause came on to be heard and was submitted upon pleadings and proof, consisting of the oral testimony of several witnesses and a number of exhibits, as have been noted.

"It is an appeal taken by the Appellant to this court under the provisions of Title 51, Section 140, Code 1940, Recompiled 1958, from a final assessment of deficiency sales tax made by the State Department of Revenue against the Appellant on January 17, 1968, for the period August 1, 1964, through June 30, 1967, and in the total amount of $26,425.39, including tax, penalty and interest computed to the date of the assessment. Under the provisions of said appeal statute, the Appellant has filed a timely and proper appeal from said final assessment to this court.

"Broadly stated, the Appellant contends that the State Sales Tax cannot be legally imposed upon it, inasmuch as it was allegedly the authorized agent of the Alabama State Docks Department, and in such capacity, it purchased and furnished the materials and supplies, which it used to construct a grain elevator for said Department at the State Docks in Mobile. This was contended to be true because, among other things, that the title to the materials and supplies was said to vest immediately in the Alabama State Docks Department, as an agency of the State of Alabama, upon the purchase thereof from the vendors. Thus, it was contended that the Alabama State Docks Department as an agency of the State of Alabama, was allegedly the real purchaser of the materials and supplies used in the construction of the grain elevator facilities, and it, not the Appellant, actually paid for or risked its credit in purchasing the materials, etc. from the suppliers. Therefore, under the sovereign immunity doctrine the Appellant was said not to be subject to the State Sales Tax. For said reasons, the Appellant insists that said final assessment was not lawfully and validly made and is void.

"On the other hand, the Appellee in answer to such contentions generally denies them. It also specifically denies that there was an agency relationship between the Alabama State Docks Department and the Appellant, and, to the contrary, asserts that the Appellant was an independent contractor and not an agent of the State in purchasing the materials and supplies from the vendors. This was said by the Appellee to be especially true as the actual facts are said to show that the Appellant paid for the materials with its own funds, and by checks drawn on its own private

bank account, and as it took possession of them upon delivery, and used them in performing the contract and in earning the 'lump sum' consideration thereunder. The Appellee also alleges that the tax was properly applied to the Appellant as an independent and private contractor, and that the final assessment of sales tax which is the subject of the appeal was validly, lawfully and correctly made against the Appellant.

"The situation here involved is not very different from many of the cases involving the same questions in regard to contractors performing cost-plus and other contracts with the Federal Government. Moreover, the decisions of both the State and the Federal Courts in resolving such questions as they relate to the Federal Contractors, would also appear to be very applicable here. See Associated Contractors v. Hamm, 277 Ala. 500, 172 So.(2d) 385, Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, [86 L.Ed. 3] among others.

"The Appellant is very clearly a private corporation organized under laws of the State of Pennsylvania, and with its principle offices and place of business located in Pittsburgh, Pennsylvania. It has, however, a branch office and place of business located in Birmingham, Alabama. It is engaged primarily in the business of doing engineering and construction work throughout the United States, and has or has had several contracts for such work in Alabama. This particular case involves a contract which said corporation entered into with the State Docks Department for Alabama, on June 24, 1964, to construct an export grain elevator and to do certain expansion work at the Alabama State Docks in Mobile, Alabama. A copy of said contract together with certain supplements and letters purporting to make certain changes or revisions in the job covered by the contract were introduced in evidence in this cause as Appellant's Exhibit 1. When said contract is read together with the letters of June 8, 1964, and June 18, 1964, the Appellant, as the prime

contractor was to perform the work called for under the contract for the 'lump sum,' consideration of to wit, $3,764,272.00. By a letter dated June 30, 1964, and also under a so-called Contract for Special Management Services (Appellant's Exhibit No. 3) which was executed by the Appellant and the Alabama State Docks Department on July 8, 1964, said contract of June 24, 1964 was said to have been further altered and revised.

"Under Articles 1 and 3 of the contract of June 24, 1964 (Appellant's Exhibit 1) the Appellant as the contractor was required to furnish 'all labor, tools, equipment, materials, transportation,' etc., in constructing the Export Grain Elevator and in doing the work called for under the contract. Article 8 of said contract provided that:

"'The contractor shall be responsible for and pay all liabilities incurred for labor and materials in the prosecution of the work.'

"Under the so-called Contract for Special Management Services (Appellant's Exhibit 3), which was entered into between the Appellant and the Alabama State Docks Department on July 8, 1964, and also through a letter between said parties dated June 30, 1964, the terms of said original contract made on June 24, 1964, which required the contractor to pay for and furnish the materials and supplies, was said to have been altered and changed by the State Docks Department appointing the Appellant as its agent for the limited purpose of the Appellant purchasing from the vendors the required materials, supplies and equipment for the performance of the work under the contract as the agent of the Alabama State Docks Department. It also was provided in said Contract for Special Management Services that the contractor, its agents and subcontractors, would advance funds and would pay the cost of the materials, etc., which they would purportly (sic) purchase for the State, and that the State would promptly reimburse the contractor or the subcontractors for all funds

which they had advanced for the payment of said materials, etc., and that moreover the property purchased was to be the property of the State. However, under paragraph 2 of said Contract for Special Management Services it is provided that such provisions would not be construed to alter the terms and conditions of payment to the contractor as set forth in the original contract. Paragraph 4 of the Contract for Special Management Services also provided that such contract was not to alter the terms and conditions of the original contract.

"The terms of said two contracts as relating to who was obligated to purchase and furnish the materials, etc. which were to be used by the contractor in performing the work called for in erecting the grain elevator then paint a conflicting picture. In addition, the original contract requiring the contractor to furnish the materials, etc., and to be responsible for and to pay for them was executed by the State Docks Department and the contractor on June 24, 1964. Thus, it seems very apparent that it was some two weeks later before the matter of the State Sales and Use Taxes came to the forefront, and before means were attempted to be used to relieve the Appellant, as the contractor, from the payment of such taxes in purchasing the materials, etc., needed by the contractor to perform the work called for under the contract. The so-called Contract for Special Management Services was not executed until July 8, 1964, and it appears that it was also about the same time that the terminology contained in the purchase orders designating the Appellant as the agent of the State Docks Department was devised.

"It is, therefore, obvious from the evidence that the so-called Contract for Special Management Services as well as the recitals contained in the purchase orders purporting to designate the contractor as the agent of the State Docks Department in purchasing the materials, etc., to be used by the contractor in performing the contract, were devices whereby said De-

partment sought to relieve the contractor from the payment of State Sales and Use Taxes, in order to reduce the overall or lump sum amount originally bid by the contractor for the job. Such steps were said to be taken by the Department in order to assist in reducing the overall or lump sum amount originally bid by the contractor for the job, and as one of the means used in attempting to reduce the amount of the bid to the extent of fitting such amount into the amount appropriated for the job by the Legislature, which appropriation was said to be substantially less than the amount of the bid. As worthy as the end might appear to be in this regard, the means used in attempting to relieve the private contractor from state taxes in order to accomplish such result, does not appear to be within the powers of the State Docks Department, in absence of the authority to do so from the Legislature or from the Constitution.

"Exemption from state taxation is said to be lawfully conferred only by the Legislature or by the Constitution, and it is not within the competency of state officials to relieve private persons or others from such taxation by contract or otherwise, where the Legislature or the Constitution has not so authorized or provided. 51 Am. Jur., Taxation, Secs. 500 and 501, p. 506, and 84 C.J.S., Taxation, Sections 215 and 216, pp. 412, 414, and 417, and cases cited in the footnotes.

"Moreover, such terms as 'Agent of the State' or similar expressions, when applied to a private contractor, as they have been in this case in the so-called Contract for Special Management Services and in the purchase orders, have been held to be nothing more than labels or nomenclature, and to have little or no meaning or effect, when, as here, they are inconsistent with what actually took place and the facts.

"The evidence clearly shows that the contract in this case provided a 'lump sum' consideration of $3,764,272.00, as compensation to the contractor for doing the com-

plete job. And as far as the materials and supplies which are involved in this case are concerned, the evidence fails to show that the State Docks Department ever reimbursed the contractor for the cost of any of said specific items of materials or supplies.

"Notwithstanding then what appears to be conflicts in the contracts themselves, the established rule, where taxes or the rights of third parties are concerned, is that the terms of the contract are not to be the controlling or governing factors, where they are in conflict with the actual facts and the way in which the contract was really carried out.

" 'The decision of agency or lack of agency does not necessarily rest on these latter decisions (Alabama v. King & Boozer and Kern-Limerick v. Scurlock). *The mere placing of terms such as agent or independent contractor in the contract does not make them such in law. The surrounding facts and circumstances determine the relationship.'*

"(Emphasis Supplied)

"United States v. Boyd, (S.Ct. of Tenn.), 211 Tenn. 139, 363 S.W.2d 193, 200. See also Associated Contractors v. Hamm, 277 Ala. 500, 172 So.2d 385, 387, Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43 [86 L.Ed. 3] and United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, 1522, 1524, 1525. [12 L.Ed.2d 713]

"For many years, the main stream of Federal Court decisions regarding matters of taxation has emphasized and re-emphasized the fact that *substance, and not form, must govern the determination of tax matters:*

"See:

"Knetsch v. U. S., 364 U.S. 361 [81 S.Ct. 132, 5 L.Ed.2d 128] (1960);

"Comm'r v. Court Holding Co., 324 U.S. 331 [65 S.Ct. 707, 89 L.Ed. 981] (1945),

"Bazley v. Comm'r, 331 U.S. 737 [67 S.Ct. 1489, 91 L.Ed. 1782] (1941)

"Higgins v. Smith, 308 U.S. 473 [60 S.Ct. 355, 84 L.Ed. 406] (1940);

"Minnesota Tea Co. v. Helvering, 302 U.S. 609 [58 S.Ct. 393, 82 L.Ed. 474] (1938)

"Gregory v. Helvering, 293 U.S. 465 [55 S.Ct. 266, 79 L.Ed. 596] (1935);

"Belcher v. Comm'r, 162 F.2d 974 (1947), cert. den., 332 U.S. 824 [68 S.Ct. 165, 92 L.Ed. 399] (1947);

"Boyce v. U. S., 190 F.Supp. 950 (D.C. La.1961);

"Gem, Inc. v. U. S., 192 F.Supp. 841 (D.C. Miss.1961).

"In Kern-Limerick v. Spurlock, [Scurlock] 374 [347] U.S. 110, 74 S.Ct. 403 [98 L.Ed. 546] (Sic: Kern-Limerick v. Scurlock, 347 U.S. 110, 74 S.Ct. 403 [74 S.Ct. 403, 98 L.Ed. 546]), the form of contract language in which the contractor was specifically designated an agent was supported by every element of substance present in the case, and it therefore was allowed to be determinative.

"The same is also true as to the very recent decision of the Alabama Supreme Court in Hamm, as Commissioner of Revenue v. The Boeing Company decided October 3, 1968, 3 ABR 18 [283 Ala. 310, 216 So.2d 288], opinion extended and rehearing denied on November 7, 1968, 3 ABR 346. While the Alabama Court made the recital in the contract in that case that the contractor was 'an independent contractor' one of the factors, as the United States Supreme Court did as to the recital as to agency in the contract in the *Kern-Limerick* case, it did so as such factor was also in full keeping with other factors in the case, which consisted of the circumstances and other evidence, which also tended to establish that Boeing was an independent contractor and not an agent of the government. This seems very apparent, in that the court in *Boeing* gave a comprehensive description of the facts involved, and relied mainly on Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43

[86 L.Ed. 3], and United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, [12 L.Ed.2d 713] in reaching its decision.

"The State Docks Department did from time to time make so-called progress payments to the contractor, but such payments as is shown from the evidence and also from representative copies of the progress billings which are in evidence as Appellee's Exhibits 1, 2 and 3, were nothing more than partial payments of the 'lump sum' to be paid the contractor for the complete job. There were no payments made to the contractor by the State Docks Department for specific materials or supplies as such, or as reimbursements for the cost of such materials. The evidence also conclusively shows that the Department had no direct dealings at all with the vendors or suppliers.

"The only exception to this was in the case of a subcontractor under the Appellant who failed to pay two of the suppliers for certain materials and where the subcontractor bankrupted and where said suppliers made a demand on the Department that it pay for the materials. The Department is said to have disclaimed any liability for payment of said accounts, and to have refused to pay same. See Depositions, Appellee's Exhibits Nos. 10 and 11, pp. 17 and 18, and 9 and 10 respectively. This is of special significance, in that it appears to be the only instances where the State Docks Department was put to a test as to the contention that the Department's credit was risked in purchasing the materials, etc., from the suppliers.

"The provisions of paragraph number 2, page 2, of the so-called Contract for Special Management Services, while plainly inconsistent with the provisions of the original contract, or contract dated June 24, 1964, which required the contractor to pay for and furnish the 'labor, tools, equipment, materials, etc., were never then as a matter of fact carried out by the State Docks Department and appear to be meaningless in the light of the facts and the substance.

"The evidence also undisputedly shows that the Appellant paid the suppliers for the materials and supplies with its own funds, and with checks drawn on its own private bank account, and was never reimbursed for the cost of any of the specific materials or supplies by the State Docks Department, but was only paid in partial payments the lump sum consideration for the entire job. The Appellant took possession of the materials, etc., upon same being delivered to them at the State Docks by the suppliers, and remained in possession thereof, until it used them in performing the contract and for its own benefit in earning the consideration paid for the job under the original contract.

"These things being considered it appears that the factual situation here is very similar to those under consideration in Alabama v. King & Boozer, supra, and Associated Contractors v. Hamm, supra, and that those cases would be very applicable and persuasive here. The contention as to the title to the materials allegedly being in the State Docks Department appears, under the facts, to also have been resolved against the Appellant in *King & Boozer* and in *Associated Contractors,* where similar contentions as to the title were made. See particularly in this respect Associated Contractors v. Hamm, supra, 172 So.2d at pages 387, and 388.

"The foregoing being considered the court concludes as follows:

"1. The Appellant, as an independent contractor, and not as an agent for the State Docks Department purchased the materials, etc., which it used to perform the contract in this case, and is the person on whom the sales tax fell.

"2. Under the facts and the evidence the Appellant, in purchasing and paying for the materials with its own checks and by obligating its own funds, and using the materials for its own benefit in performing the contract, had sufficient title and ownership of the materials, etc., to invoke the Alabama Sales Tax Act, and for the tax to

attach against it, as an independent contractor.

"3. The Appellant, as an independent contractor, and not as an agent of the State Docks Department, was the actual 'purchaser' of the materials, etc., from the suppliers, and was, as such, liable for the payment of the State Sales Tax under the provisions of Section 1 et seq. of Act 100 of the Second Special Session of the Alabama Legislature of 1959, effective October 1, 1959, and said Act as amended.

"4. The final assessment of deficiency sales tax which was made by the State Department of Revenue against the Appellant in this cause on the 17th day of January 1967, in the total amount of $26,425.39, and which is the subject of this appeal, was lawfully, validly and correctly made against the Appellant, and is due to be affirmed.

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the court that the final assessment of deficiency sales tax made by the State Department of Revenue against the Appellant on the 17th day of January, 1967, and in the total amount of $26,425.39, and which is the subject of this appeal, be and is hereby in all respects affirmed, and the relief prayed for by the Appellant is denied, and the costs of said cause are taxed against the Appellant, and judgment is hereby entered accordingly against the Appellant and the sureties on its supersedeas bond on file herein, for all of which execution may issue against the Appellant and its said sureties.

"DONE and so ORDERED this the 27 day of November, 1968.

> "Eugene W. Carter
> Presiding Judge of said Court in Equity Sitting"

After a full and careful consideration of the above final decree and the briefs and argument of respective counsel, we are convinced that decree is correct in every respect and that any addition thereto by us would be redundant. We, therefore, adopt the decree of the lower court as the opinion of this court. State v. Lane Bryant, Inc., 277 Ala. 385, 171 So.2d 91.

The foregoing opinion was prepared by J. EDGAR BOWRON, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

HEFLIN, C. J., and SIMPSON, COLEMAN, BLOODWORTH, and McCALL, JJ., concur.