216 So.2d 288

**Phillip HAMM, as Commissioner of Revenue of the State of Alabama**

**v.**

**The BOEING COMPANY.**

**3 Div. 309–326.**

Supreme Court of Alabama.

Oct. 3, 1968.

As Modified on Denial of Rehearing

Nov. 7, 1968.

Martin, Balch, Bingham, Hawthorne & Williams and Wm. J. Ward, Birmingham, for appellee.

MacDonald Gallion, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

SIMPSON, Justice.

This is an appeal by the Commissioner of Revenue from a judgment in favor of the appellee (hereinafter Boeing) rendered by the Circuit Court of Montgomery County. Eighteen cases were consolidated for trial and are presented herein. The essential facts are as follows:

Boeing is a government contractor working with the National Aeronautics and Space Administration (NASA) in assisting to develop the proposed Appollo Saturn Moon Rocket.

Boeing paid sales tax assessed by the State under protest and filed these actions for refund under the provisions of Title 51, § 891, Code of Alabama, 1940 (Recomp. 1958). It is the State's position that the sales tax is due from Boeing on the purchase of tangible personal property made within the State of Alabama. It is the contention of Boeing, on the other hand, that NASA was in fact the real purchaser of such items of personal property and that therefore no sales tax is due on the purchase and to so impose it would constitute a direct tax on the United States Government, in contravention of the principles of sovereign immunity.

The parties stipulated as follows:

Boeing is a corporation qualified to do business in Alabama, its principal place of business being Huntsville. Boeing is engaged in research and development work at the George C. Marshall Space Flight Center at Huntsville, Alabama. Its work is performed as a prime contractor with the United States government under three interrelated contracts.

These contracts provide for the following: Contract No. 2577 represented the initial contractual effort leading to development of the program for design and manufacture of the first stage booster rocket—Saturn S–1C—for the Apollo Saturn Space Vehicle. The initial program was essentially complete on December 31, 1962, and any work remaining under Contract 2577 was incorporated into Contract 5608 which, as a continuation and enlargement of 2577, became effective on January 1, 1963. It is this latter contract along with Contract No. 5606(F) with which we are concerned.

Contract No. 5608 carries the initial planning through manufacture and systems test of the S–1C. Under 5608 Boeing has provided engineering design for the S–1C Booster and for test equipment such as that used in the dynamic test vehicle, which is a structure, the instrumentation for which was furnished by Boeing, in which the entire Saturn V System can be tested, in verticle position, for structural, aerodynamic and certain other characteristics. Contract 5608 is a cost-plus-fixed-fee contract, the fixed fee being based upon estimated costs which were agreed upon by Boeing and NASA for fee determination purposes during negotiation of the contract. Contract No. 5606(F) is a cost contract only, and Boeing receives no fee in connection therewith. This contract is a facilities contract rather than a research and development contract. It is merely an agreement which establishes the terms under which Boeing was authorized and directed to acquire certain types of general use facilities with which to carry out the work required under 2577 and 5608.

With the exception of S–1C end product components and materials that Boeing ordered for direct delivery to NASA at Marshall Space Flight Center (on which no tax was paid and on which none is claimed) Boeing has paid tax under protest on its acquisitions from all sources other than GSA depots, upon which no tax is claimed.

The types of items which were acquired by Boeing under Contract 5606(F) and 5608, and upon which the sales tax was paid may be divided into these general categories:

1. Facilities Equipment acquired under 5606(F):

    a. Lathes, oscilloscopes, radial saws, table saws, arc welders, generators, drill presses, heat pumps, high vacuum pumps, voltage regulators, microfilm readers, typewriters.

Generally facilities equipment may be said to be the general use equipment used in the performance of the work done under 5608. These items all have a unit cost of $200.00 or more and all items of facilities equipment 5606(F) are "direct charge" acquisitions, which means that Boeing bills NASA directly for each item that it procures.

2. Special Tooling and Research and Development (5608): Special Tooling and Research and Development is an accounting title for direct charge acquisitions under 5608. Such acquisitions consist of:

    a. Special tooling and materials for the manufacture of such tooling.

    b. Other items of hardware needed in connection with testing and with the fabrication of test equipment under 5608.

Special tooling consists of tooling tools which may be designed and created for special uses under 5608; or wiring and cable out of which to create such tools. Boeing orders some special tools from others and also fabricates some special tools in its own machine shop at the Huntsville Industrial Center or in shops at Marshall Space Flight Center. Special tooling includes jigs and forms which are used for creating end products that never have been formed before. The newly formed end product may itself be a special tool (such as a custom built frame or dolly for handling test equipment or components of the S-1C Rocket itself) or it may constitute a part of an item of test equipment such as instrumentation for the dynamic test vehicle.

Special tooling and other research and development acquisitions may be primarily for use in the hands of Boeing in the performance of its work under 5608 or may be assembled and used by Boeing briefly and then delivered to NASA personnel, or it may be procured and shipped directly to NASA or fabricated into same assembled end-item by Boeing and delivered to NASA without use by Boeing in its research and development work under the contract. The State admits that procurements for shipments directly to NASA and used solely by NASA personnel and procurements for fabrication or assembly by Boeing into end-items which after such fabrication or assembly are delivered to NASA for use solely by NASA personnel are not subject to tax. The State does maintain that all procurements of items which are used by Boeing, however briefly, in performance of its research and development work under 5608 are taxable.

This is another case which raises the question of a State's ability to tax a government contractor in the face of a claim of sovereign immunity raised by the contractor grounded upon the assertion that the incidence of the tax is directly upon the United States in that the contractor is merely an agent of the United States Government in making the purchase, within the meaning of the Sales Tax Statute, or stated differently, the actual purchaser of the tangible personal property is the United States.

The question is not without difficulty. In State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615 (involving sales tax) and the companion case of Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9 (involving use tax) the Supreme Court of the United States, in upholding the imposition of the Alabama Sales Tax in a case involving a government contractor operating under a Cost-plus-fixed-fee Contract, stated:

"So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. * * *

"They [the contractors] were not relieved of the liability to pay the tax either because the contractors in a loose and general sense were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractor."

Thus the Supreme Court of the United States in *King & Boozer,* supra, departed from what had been believed to be the test in such cases—the economic burden test—for immunity and replaced it with what has been frequently called the legal incidence test. Thus it is said if the incidence of a tax is directly upon the United States or its agent, it is invalid by implied immunity, while any indirect tax is valid.

It seems then that under the *King & Boozer* rationale the critical question becomes one of determining what the relationship is between the United States Government and government contractor with respect to the purchase of tangible personal property. Or more succinctly the question is whether or not the federal government itself is in effect the actual purchaser of the property so that the imposition of the sales tax would constitute a direct tax on the federal government since unquestionably under the Alabama Sales Tax Statute the incidence of the tax is the purchase at retail, the tax being borne by the consumer who is "the last person to whom property

passes in the course of ownership". National Linen Service Corp. v. State Tax Comm., 237 Ala. 360, 186 So. 478.

In resolving this issue the trial court found in part as follows:

"The Federal Government operates the National Aeronautics and Space Administration (NASA). * * *

"The National Aeronautics and Space Administration (NASA) has been given the task of sending and hopefully returning American Astronauts to and from the moon during this decade. Several billion tax dollars have previously been expended to accomplish this objective and several more billion tax dollars undoubtedly will be spent in this endeavor. * * *

"In this undertaking, NASA has enlisted much of the private aeronautical industry of America to perform certain duties and functions. * * *

"In the instant case, The Boeing Company and NASA have entered into, among others, two contracts, numbered 5606(F) and 5608 respectively. These contracts form the basis for this litigation. The contracts call for The Boeing Company to perform certain duties and functions, including the furnishing and assembling of extensive test facilities at Redstone Arsenal. In return, the consideration due from NASA to The Boeing Company is based upon cost to Boeing only or cost to Boeing plus a fixed fee. By simple example, if Boeing in the performance of some aspect of one of these contracts found it necessary to procure some industrial tool at a cost of $750.00, NASA would pay only a like sum of $750.00 to Boeing under Contract No. 5606 (F) or NASA would pay a like sum of $750.00 plus the fixed fee to Boeing under the Contract No. 5608. Under 5608 the fixed fee is in no wise contingent upon the costs. The facts show these items range from typewriters and engineering drawing paper to electronic devices of all descriptions.

"There is no dispute that should an item be subjected to the tax in question, such imposed tax would be included in the costs. (In the simple example above, such imposition would increase the cost of the industrial tool to $780.00.) * * *

· "The body of case law in the field of sovereign immunity is not small. It prominently included the 1819 case of McCulloch v. Maryland, 4 Wheat. 316 [4 L.Ed. 579], and the companion cases of [State of] Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43 [86 L.Ed. 3, 140 A.L.R. 615] (sales tax) and Curry v. U. S., 314 [U.S.] 14, 62 S.Ct. 48 [86 L.Ed. 9] (use tax). It includes Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403 [98 L.Ed. 546], and a number of significant state court decisions, including Tawes v. Aerial Products, Inc. (Md.Ct.App.; 1956) 210 Md. 627, 124 A.2d 805; Avco Mfg. Corp. v. Connelly (S.Ct.Er.Conn.; 1958) 145 Conn. 161, 140 A.2d 479; and U. S. v. Boyd (S.Ct.Tenn.; 1962) 211 Tenn. 139, 363 S.W.2d 193.

"The Court is aware also of the use tax aspect of U. S. v. Boyd, supra, which was appealed to the United States Supreme Court (378 U.S. 39, 84 S.Ct. 1518 [12 L.Ed. 2d 713]) and of Associated Contractors v. Hamm (1965), 277 Ala. 500, 172 So.2d 385.

"Suffice it to say that the development of the law to the current date has been such as to impel this Court to consider all the evidence before it, giving due regard to the nature of the taxpayer's operations and weighing the significance of each relationship that is shown by the evidence, both as such matters appear in the Stipulation of Facts and the exhibits thereto and as such matters appear to the Court from its hearing and consideration of the oral testimony which was presented at the trial.

"The Court finds from the evidence that the identification between The Boeing Company and NASA, in matters of purchasing, was sufficiently close and sufficiently well noticed or understood by all relevant parties to the transactions under the contracts to constitute NASA (i. e., the Federal Government) the real purchaser of the tangible personal property which was procured under the contracts. This conclusion is most abundantly clear as to the types of items which were categorized by the parties as 'Special Tooling and R & D', 'Facilities Equipment 5606(F)' and 'Consumable Overhead—Accounts 203 and 211'. Such conclusion, however, is also clear as to the remainder of the items, for the acquisitions of such items were in contractual and practical effect for the account of the Federal Government which permitted its contractor in this instance to maintain no corporate inventory and to receive title to nothing. The nature of the operation was, peculiarly, a cooperative one, involving continuing efforts and participation by NASA personnel and by other prime contractors with NASA. The test facilities required to be assembled by Boeing were not limited in use to Boeing contracts nor to Boeing personnel. These elements of the facts, inter alia, satisfy the Court that the title provisions in the instant case have substantial meaning and should be respected.

"Having reached the conclusion that imposition of the taxes here in contest is forbidden by the doctrine of sovereign immunity, it is perhaps unnecessary to examine plaintiff's argument that, should Boeing be deemed to be the purchaser herein, then its vendors' sales to it should be construed as sales for resale to the Government. The point, however, is significant. Plaintiff's operations in Alabama consisted of two separately substantial undertakings: the supplying to the Government of skilled engineering services and the creation for the Government of intricate and extensive electronic test facilities. The evidence shows that the obtaining of these facilities was a separate and substantial objective of the Government. Most of these facilities were located on Redstone Arsenal, and were used by NASA personnel and by employees of other NASA prime contractors as well as by employees of Boeing. Consequently it may be well said—and the court so finds—that if Boeing were deemed to be the 'real purchaser' of the property procured under

the contracts, then such items (including all 'Special Tooling and R & D' items) were purchased by Boeing for resale to NASA. Accordingly, such items, without regard to the constitutional issue, were not subject to sales tax at the vendor-to-Boeing level of the sales.

"In view of the Court's finding as to the real substance of the title provisions here involved, the Court concludes that the sale-for-resale principle also would apply in favor of the other categories of purchases under contracts Nos. 5606(F) and 5608. All the procurements were made under one or the other of these contracts.

"The instant case is easily distinguishable on its facts from Alabama v. King & Boozer, supra, Curry v. U. S., supra, and Associated Contractors v. Hamm, supra, both as the several sets of facts appear in light of the principle of sovereign immunity and as they appear in connection with the sale-for-resale issue. Without detailing all matters of difference, the Court notes that those cases involved real estate construction contracts, the operational ramifications of which presented somewhat different pictures from the situation here. In those cases the relationships between the contractors and the Government were found to be not such as to constitute the contractors agents of the Government, even for purchasing purposes only. Such finding affected not only the disposition of the cases under the sovereign immunity doctrine but, in real estate construction cases, would appear to have foreclosed any sale-for-resale treatment (if, in fact, such treatment was sought).

"Plaintiff urges that the real estate construction cases are *sui generis,* but no finding in this regard is necessary. It is enough to say that the whole complex of the facts in the instant case was undoubtedly affected by the fact that the work to be done under the contracts was vastly different from that which was involved in the cases of King & Boozer, Curry v. U. S. and Associated Contractors v. Hamm, all supra.

"The defendant admits by stipulation and testimony that procurements made under Part IX of the contract numbered 5608 are not subject to tax, and that the tax collected thereon should be refunded. In light of the matters set out above in this memorandum, such refund may be made as a part of refund of all the taxes here in contest, or it may be made separately and forthwith, without prejudice to defendant's right of appeal.

"The Court does hereby determine, adjudge and declare that the sales tax collected from plaintiff under protest was illegally and invalidly collected, and the entire amount thereof is due to be and should be refunded to plaintiff as provided by Title 51, Section 891, Code of Alabama 1940 (Recompiled 1958), as amended. The costs of this proceeding are taxed against the defendant.

"This case was one of eighteen actions which were consolidated for trial at the request of the parties, and which were heard by the Court on February 16, 1967. The said eighteen cases bear the same style. The case numbers are as follows: 4660, 5110, 5473, 5905, 6254, 6646, 7002, 7389, 7719, 8199, 8590, 9009, 9554, 10034, 10443, 10922, 11408 and 11901. The findings of the Court and the relief granted herein are identical with the findings and the relief granted in each of the other seventeen cases."

It is clear that the trial court has determined from the facts that the United States Government (NASA) was in fact the real purchaser of the items of tangible personal property involved in these cases and hence the imposition of the tax would violate the principles of sovereign immunity.

In this connection the contracts contained the following provisions:

"Contract 5606(F). Title to all facilities and components furnished by the government shall remain in the government. Title to all other equipment, machinery and facilities, including installation materials and freight shall vest in

the government upon acquisition by the contractor, or upon installation in the government furnished plants which ever first occurs or upon acquisition or installation for use in other plants when approved by the contracting officer, which ever first occurs. Title to other property, the cost of which is reimbursable to the contractor under this contract, shall pass to and vest in the government upon (i) issuance for use of such property in the performance of this contract, or (ii) commencement of processing or use of such property in the performance of this contract, (iii) reimbursement of the cost thereof by the government, which ever first occurs.

"Title to the facilities shall not be affected by the incorporation in or attachment to any property not owned by the government nor shall any item of the facilities be or become a fixture or lose its identity as personalty by reason of affixation to any realty. Except as authorized by the contracting officer, the contractor (i) shall keep the facilities free and clear of all liens and encumbrances, and (ii) shall not remove or otherwise part with possession of, or permit the use by others of any of the facilities."

Contract 5608 provides:

"Title and Risk of Loss—Unless otherwise provided in this order seller shall have title to and bear the risk of any loss of or damage to items purchased hereunder until they are delivered in conformity with this order at the F.O.B. point specified on the face hereof and upon such delivery title shall pass from seller and seller's responsibility for loss or damage shall cease except for loss or damage resulting from seller's negligence. Passing of title upon delivery shall not constitute acceptance of the items by buyer."

The evidence shows that approval of the government contracting officer was obtained on purchase orders for all facilities

equipment procured under 5606(F) and all fixed price purchase orders under 5608 involving $10,000 (later increased to $25,-000) and all contracts for the manufacture of special tooling involving a cost of over $14,000.

Under these circumstances we are called upon to decide whether or not Boeing is entitled to exemption from the payment of sales tax to the State of Alabama based upon the doctrine of sovereign immunity.

In Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, the Supreme Court of the United States held invalid the imposition of the tax and distinguished that case from *King & Boozer*, supra, as follows:

"The contract here in issue differs in form but not in economic effect on the United States. The Nation bears the burden of the Arkansas tax as it did that of Alabama. The significant difference lies in this. Both the request for bids and the purchase order, in accordance with the contract arrangements making the contractors purchasing agents for the Government * * * contain this identical, specific provision:

" '3. This purchase is made by the Government. The Government shall be obligated to the Vendor for the purchase price, but the Contractor shall handle all payments hereunder on behalf of the Government. The Vendor agrees to make demand or claim for payment of the purchase price from the Government by submitting an invoice to the Contractor. Title to all materials and supplies purchased hereunder shall vest in the Government directly from the Vendor. The Contractor shall not acquire title to any thereof.' "

In discussing the distinction between the two cases, the Supreme Court of Tennessee in United States of America v. Boyd, 211 Tenn. 139, 363 S.W.2d 193, said:

"The general distinction then between these two cases is the finding of an

agency relationship between the Government and the contractor for the purchase of materials in the Kern-Limerick case. This finding was based upon (1) *the terms of the contract,* (2) *the terms of the purchase orders,* and (3) *the actual practice of the Navy to exercise its reserved right to approve each request for bids and each purchase."* (Emphasis added.)

We think this analysis of the distinction between *King & Boozer* and *Kern-Limerick* correct. In fact, in *Kern-Limerick* the Supreme Court of the United States indicated that " \* \* \* the form of contracts, when governmental immunity is not waived by Congress, may determine the effect of state taxation on federal agencies \* \* \* ", at pages 122, 123, 347 U.S., at page 411, 74 S.Ct.

■ What then, about the contracts before us? Do they contain language which would bring the case within the doctrine of *Kern-Limerick* or is the case more akin to the *King & Boozer* type of case? The trial court was persuaded that the *Kern-Limerick* line of cases was controlling. We cannot agree. We think the court overlooked the significance of that provision of the contract which clearly provided:

"The Contractor, *as an independent Contractor and not an Agent of the Government,* shall on the terms and conditions hereinafter more particularly set forth, furnish the necessary management, labor, facilities, materials, tools and equipment (except as may be furnished by the Government) and do all things necessary and/or incidental to the performance of preparatory effort toward a project of engineering, fabrication, etc. \* \* \*." (Emphasis added.)

If the Supreme Court can be taken at its word that the form of contracts "may determine the effect of state taxation on federal agencies" then we must conclude that these contracts fail to provide for immunity from state taxation for the in-dependent contractor. Apparently under *Kern-Limerick* there was nothing to prevent the federal government from so drawing the contracts. We think the case controlled by Alabama v. King & Boozer, supra. There, as here, the contract provided that title to all materials and supplies for which the contractors were "entitled to be reimbursed" should vest in the government upon delivery at the site of the work or at an approved storage site and upon inspection and acceptance by the government officer. There the Supreme Court held that

" \* \* \* we think all the provisions which we have mentioned, read together, plainly contemplate that the contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site.

\*      \*      \*      \*      \*      \*

"But however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit."

So, here, the contracts expressly provide that Boeing is an independent contractor and not an agent of the government. Nothing in these contracts gives to Boeing the right to obligate the government or pledge its credit in any fashion. It differs substantially from the contract in *Kern-Limerick* which expressly provided for purchase orders with the following language:

" 'This purchase is made by the Government. The Government shall be obligated to the Vendor for the purchase price, but the Contractor shall handle all payments hereunder on behalf of

the Government. The Vendor agrees to make demand or claim for payment of the purchase price from the Government by submitting an invoice to the Contractor. Title to all materials and supplies purchased hereunder shall vest in the Government directly from the Vendor. The Contractor shall not acquire title to any thereof.' "

It is our conclusion that Boeing is not entitled to governmental immunity under the theory that it is actually an agent of the federal government in making purchases of items called for under these contracts. Paraphrasing the language of the Supreme Court of the United States in United States v. Boyd, 378 U.S. 39, at page 48, 84 S.Ct. 1518, we cannot conclude that Boeing (Carbide and Ferguson in that case) a cost-plus-fixed-fee contractor for profit, has been so incorporated into the government structure as to become an instrumentality of the United States and thus enjoy governmental immunity. And again at page 50, at page 1525 of 84 S.Ct., "constitutional immunity does not extend to cost-plus-fixed-fee contractors of the Federal Government, but is limited to taxes imposed directly on the United States". We conclude after having examined these contracts, and the record which runs well over 1,000 pages, that the trial court erred in its conclusion that "the identification between The Boeing Company and NASA, in matters of purchasing, was sufficiently close * * to constitute NASA the real purchaser of the tangible personal property which was procured under the contracts * * *". It follows, therefore, that the decree appealed from is reversed.

Reversed and remanded.

LIVINGSTON, C. J., and COLEMAN and KOHN, JJ., concur.

*On Rehearing*

PER CURIAM.

In application and brief on rehearing the appellee asks that the court review the matter of whether the appellee, as the contractor, was the agent of the Federal Government (NASA) in purchasing the materials, equipment and supplies from the suppliers under Contracts 5608 and 5606F. Such materials, etc., were all found by this court in its opinion to have been used by the contractor, at least for a time, in performing the research and development work called for under the Contract 5608. In this respect the court feels that it has in its 24-page opinion on appeal fully considered and answered the alleged question of agency, to the effect that the purchases of the materials, etc., by the appellee from the suppliers, whether made under Contract 5608 or Contract 5606F, were made by the appellee as an independent contractor and not as an agent of the Federal Government. The application of the appellee and brief in support thereof bring nothing new into the picture, and we do not deem it necessary to give the alleged agency question any further consideration, other than to reaffirm what we have already concluded on the subject.

■ The appellee next asserts that we have not in the opinion answered or written to the question, or holding of the trial court, concerning the sales to the appellee, as the contractor, being allegedly sales for resale to the government, or in effect wholesale sales on the contractor level, and as such not subject to the sales tax, regardless of the question of agency. While we did not go into this proposition in as much detail as we did the other, it was considered by us along with the question of agency. The holding of the trial court on the question of sales for resale was in the opinion on appeal not only referred to by us, but also quoted in its entirety. It was also pointed out in the opinion that the State was attempting to tax in these cases only the procurement of items which were used by the appellee, however briefly, in performance of its research and development work under Contract 5608. The purchase of such items by the appellee for the purpose of its using them, even in some instances for only a brief period of

time, in performing the research and development work under said contract, tends to establish that such purchases by the appellee were not for resale, but were incidental to such research and development work done by the appellee. Moreover, the entire decree of the trial court as quoted in the opinion was reversed by us.

The record in these cases leads us to further conclude that the appellee, as the independent contractor, purchased the materials, etc., from the suppliers for the purpose of using the materials in performing Contract No. 5608, and in doing what appears to have been exclusively research and development work thereunder, insofar as such contract was performed in Alabama. The record also shows that the materials, etc., were so used by the appellee. Under the circumstances the sales to the appellee could hardly be considered to be sales for resale, or wholesale sales.

In the case of United Aircraft Corp. v. O'Connor, 141 Conn. 530, 107 A.2d 398, 402, the contractor was engaged under a government contract in research engineering and experimental work for the United States Navy and Air Force, in an attempt to develop more efficient aircraft motors. The Connecticut Supreme Court held that the purchases of materials by the contractor, to be used by it in performing such work, were not for resale, even though some of the experimental aircraft motors involved were actually delivered to the government by the contractor. Such deliveries were said not to be sales by the contractor to the government, but were held to be merely incidental to the special or professional services rendered by the contractor. See also Snite v. Department of Revenue, 398 Ill. 41, 45, 74 N.E.2d 877; note 139 A.L.R. 372, 381; and Haden v. Mc-Carty, 275 Ala. 76, 152 So.2d 141.

The case of United Aircraft Corporation v. Connelly, 145 Conn. 176, 140 A.2d 486, cited by the appellee, is distinguishable from these cases and also the cases above cited, including the *O'Connor* case. In

the *Connelly* case the contractor was found to be actually engaged in manufacturing and selling certain personal property *as such* to the government, rather than performing exclusively professional services or research and development.

There being no further proceedings necessary, the decree of the trial court is hereby reversed and a decree rendered in accordance with the opinion.

Opinion modified and extended and application overruled.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and KOHN, JJ., concur.