306 So.2d 5

**DEPARTMENT OF REVENUE,**
State of Alabama

v.

**JAMES A. HEAD & COMPANY, INC.,**
a corporation.

**Civ. 272.**

Court of Civil Appeals of Alabama.

June 19, 1974.

Rehearing Denied Aug. 28, 1974.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., William H. Burton, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for appellant.

**138**

Allen D. Rushton, Birmingham, for appellee.

BRADLEY, Judge.

This is an appeal by the Department of Revenue, State of Alabama, from an adverse judgment rendered by the Circuit Court of Jefferson County in a sales tax assessment case.

A final assessment for deficient sales taxes in the amount of $9,958.94 was rendered against James A. Head and Company, Inc., a corporation (hereinafter called "Head") by the State Revenue Department (hereinafter called "State"), and Head appealed said assessment to the Circuit Court of Jefferson County where, after a hearing, a judgment was handed down holding for naught the action of the State.

In its judgment, the trial court held that Head sold personal property to tax exempt institutions (schools and colleges) and therefore was not liable to collect and remit sales tax on such sales.

The State had contended that Head was a contractor who purchased building materials for use in the form of real estate all within the purview of Title 51, Section 786(2)(j), Code of Alabama 1940, as Recompiled 1958 and as amended, which is in pertinent part as follows:

" . . . Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold. . . ."

Head had contended that the sales of personal property in question were made to schools, which are exempt from paying sales tax by virtue of Title 51, Section 786(34)(m), Code of Alabama 1940, as Recompiled 1958, which is as follows:

"The gross proceeds of the sale or sales of tangible personal property to county and city school boards and independent school boards as defined by Senate Bill No. 20 of the 1959 second special session of the legislature of Alabama [Title 52, section 197(1) et seq.] and all educational institutions and agencies of the state of Alabama, the counties within the state, or any incorporated municipality of the state of Alabama."

The facts in this case reveal that Head bid on and was awarded contracts to:

1. Furnish and install in certain new buildings at the University of Alabama

at Birmingham and in Guntersville High School, Guntersville, Alabama, accoustical floor covering (wall to wall carpet);

2. Furnish and install classroom and auditorium seating in new buildings at Auburn University and Samford University;

3. Furnish and install carrels in the library at Jacksonville State University.

In 1969 Auburn University advertised for bids on eight hundred Haywood Wakefield type chairs with folding tablet arms for placement in the auditoriums of the new Haley Center. The offer for bids sought prices for furnishing and installing these chairs in the Center according to certain specifications. The manager of procurement at Auburn, who was in charge of this project, testified that this seating was especially designed for Haley Center and was intended to be attached to the concrete floor and remain there indefinitely. The cost of the chairs, and the basis for the tax assessment, was $24,158.18.

After receiving the contract, Head arranged to have the chairs supplied according to Auburn's specifications. Upon receipt of the chairs, they were installed by Head's subcontractor under Head's supervision.

The auditoriums where the chairs were installed were inclined and the chairs had to be designed so as to fit on the incline. This required that the legs be specially made to fit these elevations, and, during installation, it would sometimes be required that certain seats be shimmed to make them level.

Mr. John Burgess, Director of Procurement at Auburn University, testified that the seating in question was installed in several auditoriums in Haley Center, a new building, and that the chairs were specifically designed to fit into those particular auditoriums. He also stated that the chairs were intended to be permanent and

were considered a part of the building as opposed to inventoried personal property.

Head, after bidding, was awarded a contract to furnish and install accoustical floor covering in the new Guntersville High School. Some 5,000 yards of wall to wall carpeting was installed at a cost of $25,524.24. This amount was the basis for the tax assessment. The installation of the carpet was subcontracted. The University of Alabama at Birmingham contract with Head called for furnishing and installing accoustical floor covering in certain new buildings on the Birmingham campus. The basis for the deficiency tax assessment was the cost of the materials to Head, and that amount was $63,846.94.

Mr. Dent, a former employee of Head's contract department, testified that the carpeting installed at the University of Alabama at Birmingham and Guntersville High School was wall to wall carpeting cut to fit the rooms where installed and glued to a concrete base. He stated that the floor coverings could not be easily removed and where attempted had resulted in damage to the extent of about thirty-five percent.

The testimony of Mr. Hillhouse, Assistant Director of Planning for UA–B, was that the carpeting was made according to specifications and was installed by cutting, fitting and gluing it to the concrete base in the buildings. He stated that it could be removed but some of the carpet that was taken up due to the failure of the colors to match was damaged to the extent of about thirty-five percent.

He also testified that the carpeting took the place of other type floor covering such as wood or tile, and was in fact "flooring."

A contract was awarded to Head for the furnishing and installation of carrels in the library at Jacksonville State University. The carrels cost $33,248 and the tax was based on this figure.

The carrels were two-man and five-man study niches and were designed to fit into

alcoves in the library at Jacksonville State University. The carrels rested on and were screwed to two by fours which had been bolted to the walls of the library. There was testimony that these carrels could be fitted with legs and be placed in any location where desired; however, the carrels in question were not on legs but were screwed to the walls in the library.

Mr. Dent also testified that the carrels placed in the library at Jacksonville State University were of a standard type but that the alcoves were measured and the carrels were made to fit into those alcoves. If there was more space in the alcove, a filler was used to make the carrel blend into the space. Mr. Dent stated that cleats (two by fours) were bolted to the walls and the carrels were then screwed down onto those cleats.

Head entered into a contract with Samford University to furnish and install classroom and auditorium seating in a new building on its campus. The cost of the seating, which was the basis for the deficiency tax assessment, was $24,893.33.

Mr. Dent said that he was in charge of the seating installation at Samford University and it consisted of classroom and auditorium type seating. The classroom seating was installed on wood platform risers and the auditorium seats were bolted to a sloping concrete floor. He stated that the seats for the auditorium were standard but that their base had to be tapered to fit the slope of the floor. The specifications for the bases were furnished to the manufacturers of the seats. Mr. Dent stated that these chairs would not be suitable for other uses unless the legs were changed.

In the classrooms, the seats were mounted and attached to wood risers which had been constructed by the installers for Head.

If the State's deficiency tax assessments are to be upheld, the evidence must support the statutory directive that Head was a contractor purchasing building materials for use in the form of real estate in each of the five transactions heretofore described. See Section 786(2)(j), *supra.*

We will consider first the carpet transactions.

▪ It is undisputed that Head bid on offerings by the University of Alabama at Birmingham and Guntersville Board of Education for the furnishing and installation of accoustical floor covering in certain buildings owned by each entity. Head, by virtue of its low bid, was awarded a contract by each to furnish and install the floor covering in certain enumerated buildings.

Does this evidence support a conclusion that Head was a "contractor" within the meaning of Section 786(2)(j), *supra?*

▪ The term "contractor" has been defined generally as one who formally undertakes to do anything for another, Stocking v. Johnson Flying Service, 143 Mont. 61, 387 P.2d 312; or one who contracts to furnish a product or service to another, Grand Rapids Gravel Co. v. State Dept. of Treas., 14 Mich.App. 677, 166 N.W.2d 53. Also, a "contractor" is ordinarily understood to be the person who undertakes to supply labor and materials for specific improvements under a contract with an owner or principal. Moorhead v. Grassle, 254 Minn. 103, 93 N.W.2d 678. And, in S. M. Lawrence Co. v. MacFarland, 210 Tenn. 100, 355 S. W.2d 100, the Tennessee Supreme Court said:

"The cause presents the question of whether one engaged in the business of contracting for the establishment of air conditioning systems in buildings, which work requires, in addition to the furnishing of a cooling unit, the connection of such unit with electrical and plumbing facilities and the installation of ducts within and through walls, ceilings and floors to convey cool air to various parts of the building, is liable for sales or use tax as a *contractor* rather than a retail

seller of tangible personal property, the contractee being a church or municipality.

. . . . . .

"We are of the opinion that the appellant was a *contractor* which used the materials and equipment, upon the value of which the tax herein imposed was levied, in the performance of its contracts with its customers and that the customers did not purchase the equipment and have same installed." (Emphasis added.)

Applying these definitions of a contractor to the evidence, we are convinced that Head was a "contractor" within the meaning of Section 786(2)(j), *supra*.

The next question is whether the floor covering can be classified as "building materials" within the meaning of Section 786(2)(j), *supra*.

■ The testimony conclusively shows that in both contracts the wall to wall carpeting was placed on a concrete base by the use of an adhesive. It was intended to and did replace other type flooring such as wood or tile. There was testimony that the carpeting was in this instance "flooring." The State also introduced into evidence a 1961 regulation on the subject of carpeting. It is as follows:

"B27–101

*Carpeting and Floor Coverings*

"Carpeting and other floor coverings which are shaped to fit a particular room or area and which are attached to the supporting floor with cement, tacks or by some other method making a permanent attachment are considered to be building materials and the retail (taxable) sales of them are to the person making the installation. Where a vendor is both selling carpeting or other floor coverings for installation by others as well as furnishing and installing carpets or other floor coverings as a contractor, the rule on dual businesses will apply with the vendor purchasing all carpeting or other floor coverings at wholesale and thereafter paying to the Department of Revenue the amounts of tax due on sales to others for installation by them and on withdrawals for use as a contractor to furnish and install.

"Rugs, mats, and linoleum types of floor coverings which are not attached but which are simply laid on finished floors are sold at retail to the building owner or occupant, the measure of the tax being the gross proceeds of the sale without any deduction for services incidental to the sale such as trimming, joining, binding, or delivering."

■ "Building material" has been defined as material used in construction work and is not limited to materials used in constructing a building with sides and covering. Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So. 254. The term has also been construed to include any type of materials used for the improvement of one's premises, Christman v. Meierhoffer, 116 Mo.App. 46, 92 S.W. 141; and to include anything essential to the completion of a building or structure of any kind for the use intended. Mutual Lumber Co. v. Sheppard, 173 S.W. 2d 494 (Tex.Civ.App.).

In the instant case we conclude that the accoustical floor covering is "building material" within the meaning of Section 786(2)(j), *supra*.

■ The next question is whether or not the floor covering is sufficiently attached to the buildings as to become a part thereof and be declared a part of the realty within the meaning of Section 786(2)(j).

The evidence is without dispute that the carpeting was wall to wall, attached to a concrete base with an adhesive and intended to be "flooring." The evidence further shows that the carpeting was not carried in the inventory of personal property of either educational institution.

The criterion for deciding whether an object is so attached to real estate as to become a part thereof is generally as follows:

" . . . First, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and, third, intention to make the article a permanent accession to the freehold." Patterson v. Chaney, 24 N.M. 156, 173 P. 859, 6 A.L.R. 90.

The carpet in question was annexed to the concrete base of the buildings by an adhesive; it was intended to be flooring in the buildings; and it was intended that it be permanently attached to the base. Consequently, we conclude that the carpeting in question became a permanent part of the buildings wherein installed and satisfied the requirement in Section 786(2)(j) that it become a part of the real estate.

We therefore conclude that the furnishing and installing of the floor covering in the present case brought Head within the purview of Section 786(2)(j), and the deficiency sales tax assessment imposed on Head by the State based on the cost of materials to it was correct. We also find that the trial court plainly and palpably erred in rendering judgment to the contrary.

The next contract we shall consider will be the one for the furnishing and installation of auditorium seats in the Haley Center at Auburn University.

After submitting the low bid, Head was awarded a contract for the furnishing and installing of seats in several auditoriums in Haley Center. The relationship between Head and Auburn University is so similar to the relationships between Head and the University of Alabama at Birmingham and Guntersville City Board of Education that we conclude that Head was also acting as a contractor in its dealings with Auburn University.

The next question is whether the auditorium seating was building materials within the meaning of Section 786(2)(j).

The building in which the seats were to be installed was new, and the evidence clearly shows that the seating was designed to go in the particular rooms in Haley Center and nowhere else. The testimony by Mr. Burgess was to the effect that the auditoriums would not carry out their purpose unless the seating was installed as designed. We conclude therefore that the evidence shows that the seating installed in Haley Center was "building material" within the meaning of Section 786(2)(j).

Was the seating in Haley Center so attached to the building as to make it a part of the realty and therefore satisfy the third requirement of Section 786(2)(j)? We think it was. The evidence reveals that the seating was bolted to the concrete base in each auditorium and was intended to be a permanent part of those rooms. As above defined, these seats were attached to and became a part of the real estate and thereby satisfied the third requirement of Section 786(2)(j). The cost of these seats to Head was therefore subject to sales tax and the State's deficiency assessment therefor was correct. The trial court plainly erred in disallowing this deficiency assessment.

The next assessment to be considered is on the furnishing and installing of carrels in the library at Jacksonville State University.

We are convinced that the evidence in this case is sufficient to prove that Head was acting as a contractor in its dealings with Jacksonville State University.

We are also convinced that the carrels on which the deficiency assessment for sales tax was imposed were permanently attached to real estate, i. e., the library, and satisfy the third requirement of Section 786(2)(j). The evidence clearly shows that the carrels were attached to cleats which had been bolted to the walls

of the library. There was also evidence that these carrels had been designed to fit into the alcoves in the library. There was no evidence that these carrels were intended to be used any place other than where they had been placed by the contractor in accordance with previously drawn specifications.

The remaining question to be answered is whether these carrels can be considered "building materials" within the meaning of Section 786(2)(j). We believe that they should be so considered.

The two hundred fifty-six carrels on which the deficiency tax assessment was made were attached to the walls of the Jacksonville State University library and were specifically designed to fit into the alcoves of the library and be affixed to the library walls. Such proof brings the carrels within the definitions of building materials heretofore set out.

Furthermore, in Robinson & Hale, Inc. v. Shaw, 242 N.C. 486, 87 S.E.2d 909, the Supreme Court of North Carolina said that a pre-cast septic tank and its component parts were "building materials" within the meaning of a statute imposing use tax on out-of-state purchases of building materials, apparently on the theory that the septic tank performed a necessary function in the plumbing system of the building and thereby improved its usefulness. So in the case of the carrels an essential function of the library was carried out by providing secluded study nooks for persons using the library. We therefore conclude that the carrels are "building materials" as that term is used in Section 786(2)(j), *supra*.

Here again, the proof plainly establishes the error of the trial court's judgment nullifying the State's deficiency tax assessment against Head.

The final contract to be considered is the one for furnishing and installing classroom and auditorium seating at Samford University.

In the Samford University contract, Head agreed to furnish and install classroom and auditorium seating in certain rooms of a new campus building according to specifications. The arrangement between Head and Samford University was the same as had been made with the other institutions; therefore we say that Head was a contractor within the meaning of Section 786(2)(j) in its dealings with Samford University.

As to the seating called for by this contract, it was attached to the realty and became a part thereof, as required by Section 786(2)(j). The classroom seating was bolted to wood risers which were in turn bolted to the concrete floor. The auditorium seating was bolted directly to the concrete floor.

We also consider this particular seating to be building materials as defined by Section 786(2)(j). As in the seating at Haley Center, the Samford chairs were for installation in particular rooms of the classroom building and they were to serve a particular purpose. This purpose could not be satisfied without the addition of the seating. In other words, the purpose of the building was as a teaching facility and such purpose could not be carried out without the chairs. We conclude that the chairs in this instance amounted to just as much an improvement to the classroom building at Samford as did the precast septic tank in Robinson & Hale, Inc. v. Shaw, *supra*, and therefore was building materials within the context of Section 786(2)(j).

The trial court's decision as it relates to the Samford University contract is plainly and palpably not supported by the evidence and is in error.

Both parties in this cause have relied on a series of Alabama cases dealing with the construction of the Code provisions here involved. The appellee stresses his reliance on the case of State v. Helburn Co., 269 Ala. 164, 111 So.2d 912. In that case the taxpayer sold air conditioning equip-

**144**

ment to various government agencies, and by its contracts with these agencies, it would then install the equipment. The issue before the Supreme Court in *Helburn* was whether the taxpayer's dealings were sales of tangible personal property within the meaning of Section 752(1)(j) of Title 51, *supra*, and it said no. That case did not deal with the issue now before this court, and that is whether the taxpayer was a contractor within the meaning of Section 786(2)(j). In the later case of State v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315, the Supreme Court squarely held that one who furnishes and installs the components for air conditioning units is a contractor within the meaning of Section 786(2)(j), *supra*.

This court has also had an opportunity to construe the Code section involved in this appeal. In State v. Acker, 45 Ala. App. 574, 233 So.2d 514, we held that one who installs kitchen cabinet units which had been prefabricated according to specifications is a contractor within the meaning of Section 786(2)(j), *supra*, rather than a manufacturer under Section 786(2)(m). Consequently, we find that the decided weight of authority supports the conclusion that the appellee is not a seller of tangible personal property to tax exempt institutions, but is instead a contractor within the meaning of Section 786(2)(j), *supra*.

Finally, this court is not unmindful of the high presumptive quality that attaches to the findings of a trial judge sitting without a jury. However, where the trial court is plainly and palpably wrong, the findings are subject to reversal. Bankers Life & Cas. Co. v. Long, 48 Ala.App. 570, 266 So.2d 780. We hold that the trial court committed such error and that the judgment is due to be reversed.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.