BRADLEY, Judge.
The Alabama State Department of Revenue has brought this appeal from a final decree rendered in the Circuit Court of Montgomery County holding invalid a use tax assessment against Algernon Blair Industrial Contractors, Inc.
The taxpayer, Algernon Blair, entered into a contract with the United States Army Corps of Engineers to furnish and install certain items at the Marshall Space Flight Center in Huntsville, Alabama. Pursuant to the contract, Algernon Blair purchased stainless steel piping and structural steel box girders from Guyon Alloys, Inc. and Sheffield Products Company, respectively. Algernon Blair installed these items in an existing concrete test tower so that the tower could be used in a liquid hydrogen external tank test project. The steel piping and steel box girders were a part of structural modifications on the same test stand which had been used in testing the Saturn rocket. The box girders were fabricated in the wholesaler’s welding shop and then erected and bolted to the test tower by the purchaser, Algernon Blair.
The trial court determined that the items in question were attached to the test facility in a temporary manner. And there was evidence that the steel piping and box girders would be used at the facility only for a limited period of time during which the stress-bearing capabilities of a single large liquid hydrogen fuel tank would be tested. There was also evidence that the test facility, of which these items were a part, could be dismantled following the completion of *250 the tests and the items removed and stored for usage by NASA in future projects.
On the basis of this evidence and other testimony, the trial court concluded that the stainless steel pipes and the structural steel box girders attached to the test stand had “not become fixtures or permanent accessions to the real property, but rather [were] installations of tangible personal property expressly subject to removal, reuse and relocation.” Accordingly, the court ruled that the items on which the use tax had been levied were exempt from taxation because the purchase of these items by Algernon Blair was a sale of tangible personal property by a wholesaler (Guyon Alloys and Sheffield Products) to a dealer (Algernon Blair) for resale (to the United States Army Corps of Engineers). Title 40, chapter 23, section 60(4)(a), Code of Alabama 1975. The court premised its ruling on the fact that the items were not sold to the contractor (Algernon Blair) for either resale in the form of real estate or use in the form of real estate, and thereby did not constitute a retail sale which is subject to use tax provisions. The finding of the court that the disputed transaction was not a retail sale was based on evidence which tended to show that the steel pipes and box girders were not permanently affixed to the test stand and could not therefore be deemed for “resale or use in the form of real estate” under the retail sale provisions of the Alabama Code. Title 40, chapter 23, section 60(5), Code of Alabama 1975.
While we find no error in the court’s determination regarding the factual question of whether the items were affixed to the realty on a permanent basis, we believe that the court erred in concluding that the items were not subject to the use tax levied on them by the State Department of Revenue.
The threshold question in this matter involves the relationship between section 60(4)(a) and section 60(5) of the Alabama Sales and Use Tax Law. Title 40, section 23, section 1, et seq., Code of Alabama 1975.
Section 60(4)(a) defines a wholesale sale or sale at wholesale in the following manner:
“A sale of tangible personal property by wholesaler to licensed retail merchants, jobbers, dealers or other wholesalers for resale . . . .”
Section 60(5) in applicable part states that one example of a sale at retail or a retail sale is:
“Sales of building materials to contractors, builders or landowners for resale or use in the form of real estate . . . .”
The applicability of the above quoted retail sales provision is premised on whether the building materials are sufficiently integrated into the realty so that they may be deemed “fixtures.” Department of Revenue v. James A. Head & Company, 54 Ala.App. 136, 306 So.2d 5 (1974). In other words, if the materials are not affixed to the realty to the extent necessary to constitute a “fixture,” the materials are not deemed to be for use in the form of real estate and that portion of section 60(5) dealing with such uses is rendered inapplicable as far as use tax consequences are concerned.
However, merely because the provisions of section 60(5) relating to retail sales in real estate situations are inapplicable to the circumstances of a particular case, the transaction in which the taxpayer was engaged is not automatically transformed into a wholesale sale. Indeed, the first sentence of section 60(5) provides that a retail sale includes “[a]11 sales of tangible personal property except those above defined as wholesale sales.” (Emphasis supplied.) Accordingly, the transaction in question must meet the definitions of a sale at wholesale provided in section 60(4) before the taxpayer can avoid payment of use taxes. Otherwise, the transaction is construed to be a retail sale and subject to the use tax.
The relevant definition of a wholesale sale for the purposes of this case is found in section 60(4)(a). Under this provision a transaction is not a sale at wholesale unless a wholesaler conveys to the persons specified in the section tangible personal property for resale. Furthermore, section *251 60(4)(a) provides an exclusion clause which, in certain instances, prevents a transaction from constituting a sale at wholesale. Section 60(4)(a) states that a wholesale sale “does not include a sale by wholesalers to users or consumers, not for resale.” (Emphasis supplied.)
Consequently, the critical question in this case becomes whether Algernon Blair is within the confines of the above quoted provision and thereby excluded from claiming that its delivery to and installation of steel pipes and box girders at the test facility under the terms of its contract with the United States Army Corps of Engineers constituted a sale at wholesale. Specifically, the question is whether Algernon Blair purchased the items from the wholesalers for its own consumption or use in installing the items at the test facility, or conversely, whether it purchased the items in order to resell them to NASA for the latter’s use and consumption. We hold that Algernon Blair was a user or consumer of the items it installed at the facility and accordingly that Algernon Blair may be compelled to pay a use tax on the items under the principle pronounced in the first sentence of section 60(5).
Algernon Blair acted as a construction contractor in its transaction with the United States government, Department of Revenue v. James A. Head & Company, 54 Ala.App. at 140, 306 So.2d at 8 (defining the term “contractor”) since it undertook to supply labor and materials for the specific purpose of installing them in the test stand. The labor and materials supplied constituted specific improvements on the stand.
It is axiomatic that the purpose of the use tax is to tax the ultimate consumer of a product. See Department of Revenue v. James A. Head & Company, supra; Hamm v. Boeing Company, 283 Ala. 310, 216 So.2d 288 (1968). And, a construction contractor is a consumer. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La. 1975). The Louisiana Supreme Court in Chicago Bridge & Iron Co. v. Cocreham, in quoting from an earlier case stated:
“ ‘A contractor who buys building material is not one who buys and sells — a trader. He is not a “dealer,” or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber.
“ ‘His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials. Sales to contractors are sales to consumers. . . ’ State v. J. Watts Kearny & Sons, 181 La. 554, 559, 160 So. 77, 78 (1935) (Emphasis provided).”
Accordingly, we believe that Algernon Blair, as a consumer, did not resell the items and is therefore subject to the payment of the use tax.
Nor can we accept Algernon Blair’s assertion that its contract to furnish and install stainless steel pipes and structural steel box girders to the Marshall Space Flight Center was a divisible contract. Algernon Blair argues that its contract with the United States Army Corps of Engineers was, in effect, two contracts in one — a contract to sell the items to the government and a contract to supply services for installation of the items in the test stand.
A similar argument was considered and rejected by our supreme court recently in Alabama Precast Products, Inc. v. Boswell, Ala., 357 So.2d 985 (1978). In Alabama Precast Products the taxpayer not only manufactured and sold roofing slabs, it also engaged in the business of performing certain construction contracts. The taxpayer entered into a “furnish and install” contract with another company whereby the former would manufacture the slabs at its plant in Birmingham, Alabama from building materials withdrawn from stock purchased at wholesale, and then take the completed slabs to South Carolina where employees of *252 the taxpayer would install the roofing slabs on a building. The taxpayer contended that the “furnish and install” contract represented separate and divisible contracts, with the first such contract being for the sale of the slabs and the second being for the installation of the slabs. Our supreme court refused to recognize the contract as divisible and held that “Alabama Precast Products was the ultimate consumer of the raw materials and as such was liable for the tax thereon.”
Despite the decision in Alabama Precast Products, Inc. v. Boswell, Algernon Blair attempts to distinguish the holding in that case from the facts involved in the case at hand. First, Algernon Blair maintains- that a different provision of the Alabama Code was interpreted by the court in Alabama Precast Products. Second, Algernon Blair submits that only when the building materials used by a construction contractor in a building or structure become affixed to the realty in a permanent manner, as they were in Alabama Precast Products, is the holding in that case applicable. Consequently, Al-gernon Blair argues that the finding by the court below that the steel pipes and box girders were not permanently affixed to the realty precludes the Department of Revenue’s reliance on the decision rendered in Alabama Precast Products in the present situation. However, we cannot agree with either of these contentions.
While it is true that the court in Alabama Precast Products construed Title 40, chapter 23, section l(a)(10), Code of Alabama 1975, we believe that the holding in that case that a construction contractor who performs installation services has consumed the materials used in the performance of those services is applicable to section 60(4)(a). Therefore, a construction contractor is a user or consumer within the statutory exclusion found in section 60(4)(a), which states that a wholesale sale “does not include a sale by wholesalers to users or consumers, not for resale.”
If the contractor has purchased the materials for his own consumption, it would be illogical to say that he has also resold them. In such instances the contractor has obtained the items to be used in construction and the only thing which he is selling is his services in the performance of that construction.
We must likewise reject Algernon Blair’s argument that the Alabama Supreme Court’s decision in Alabama Precast Products is limited to situations where the raw materials consumed by the contractor are affixed to the realty in a permanent manner. Such an interpretation of that decision would mean that the trial court need only examine the evidence presented to it to determine if the items purchased by the contractor were for either resale or use in the form of real estate under section 60(5). And if the building materials were not purchased for (1) resale or (2) use in the form of real estate, then the transaction would be a wholesale sale in view of the fact that it did not come within the provisions defining a retail sale.
However, as we have noted in an earlier portion of this opinion, merely because a transaction does not meet the definitional requirements of a retail sale in the real estate situation does not automatically render the transaction a sale at wholesale. Indeed, the transaction in question must constitute a wholesale sale under the provisions of section 60(4) before it can escape use tax provisions. Title 40, chapter 23, section 60(5). Furthermore, if under section 60(4)(a) the purchaser-contractor has obtained the items for his own use or consumption rather than for resale, he is precluded from claiming that the transaction was a sale at wholesale.
In the present case Algernon Blair purchased the items in question for its own use and consumption in a construction project, and it does not matter if the items were affixed to the realty on a permanent or temporary basis since its own use and consumption of the items prevented it from claiming that it had obtained them for resale. See Layne Central Co. v. Curry, 243 Ala. 165, 8 So.2d 839 (1942); Hamm v. Boeing Company, 283 Ala. 310, 216 So.2d 288 (1968); State v. Thiokol Chemical Corp., 46 Ala.App. 558, 246 So.2d 447 (1970).
*253 Moreover, even if we were to decide that Algernon Blair’s contract with the Army Corps of Engineers was divisible and that the former resold the steel pipes and box girders to the latter, the transaction would nevertheless remain a retail sale under the language contained in section 60(5). Section 60(5) states that “sales of building materials to contractors, builders or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.” According to this provision a transaction involving the sale of building materials by a contractor is a retail sale in either of two instances: (1) if the materials are used in the form of real estate and (2) if the materials are resold by the contractor.
The trial court in this case held that the materials in question were not used in the form of real estate. It also held that the materials were not resold in the form of real estate. The latter ruling was incorrect since it is the resale of building materials by a contractor which constitutes the taxing event. The language “in the form of real estate” pertains only to the use of the building materials; it has no relevance to the resale of the materials by a contractor such as Algernon Blair.
We are of course aware of the high presumptive quality that attaches to the findings of a trial court sitting without a jury. However, that presumption is not enough to sustain a decision by the court in instances where it has misapplied the law to the facts or where its findings are plainly and palpably in error. State Department of Revenue v. Consumers Bagging Co., 48 Ala.App. 95, 262 So.2d 297 (1972); Department of Revenue v. James A. Head & Company, supra. In the instant case we conclude that the trial court committed such error and that the judgment is due to be reversed and remanded.
REVERSED AND REMANDED.
HOLMES, J., concurs.
WRIGHT, P. J., concurs in the result.