This is a use tax assessment case. On December 3, 1982, the Department of Revenue, State of Alabama, entered a final assessment of $114,564.22 against the taxpayer, Marmon Industries, Inc. The assessment covered the period from January 1, 1980, to June 30, 1981, and included use taxes and the interest thereon.
Marmon paid the disputed amount and perfected its appeal to the Montgomery County Circuit Court, pursuant to section 40-2-22, Code of Alabama (1975). Trial was had before the circuit court, with the evidence being presented largely by extensive stipulations of fact and exhibits. On October 30, 1983, a final judgment was entered in favor of the State of Alabama, upholding the assessment. However, upon the taxpayer's motion for a new trial, an amended order was entered setting aside the assessment and directing that the amount paid be refunded. The State then filed a timely appeal to this court.
Marmon Industries, Inc. (Marmon) is a Delaware corporation with its principal corporate headquarters in Chicago, Illinois. Marmon conducts operations at two leased manufacturing facilities in the cities of Albertville and Cullman, Alabama. The facilities are owned by the Albertville and Cullman Industrial Development Boards, which were organized, for purposes of this appeal, under the provisions of the Cater Act, see sections 11-54-80 through -123, Ala. Code (1975) 1983 Cum.Supp. Each facility consists of land, buildings, equipment, and machinery.
Marmon's vice-president and general counsel testified that the cost of financing capital expansions is so great that in order to expand, companies such as Marmon often work with local industrial development boards who are authorized to issue tax-free industrial revenue bonds. Marmon used such an approach with the Albertville and Cullman Industrial Development Boards in *Page 800 
order to establish the two facilities here at issue.
On June 20, 1979, the Albertville Board adopted a Resolution of Intent authorizing the sale of $8,000,000 of bonds to finance the construction of a facility that would be leased to Marmon. On August 10, 1979, Marmon and the Albertville Board entered into a Bond Purchase Agreement with E.F. Hutton Company pursuant to which E.F. Hutton agreed to purchase the Albertville Board's industrial revenue bonds. On September 4, 1979, Marmon's board of directors adopted resolutions authorizing its officers to enter into a lease agreement with the Albertville Board. On November 5, 1979, E.F. Hutton refused to purchase the Albertville bonds, causing Marmon to file suit against it in Jefferson County Circuit Court.
On January 3, 1980, the Albertville Board entered into a $2,891,000 construction contract for construction of the Albertville facility. The construction contract did not include equipment which the Albertville Board was to purchase from Marmon. The Albertville facility became operational, with all equipment in place, on or about January 1, 1981.
At various times during 1981, the Albertville Board issued purchase orders for equipment delivered to it by Marmon during 1980 and 1981. Marmon had previously purchased this equipment with its own funds from vendors and repaired and refurbished it. All equipment purchases by Marmon were made at various times after June 20, 1979, the date on which the Albertville Board adopted the resolution authorizing the sale of bonds, construction of the manufacturing facility, acquisition of the equipment from Marmon, and the lease of the facility to Marmon. The use tax here at issue was imposed upon Marmon after it purchased the equipment from out-of-state vendors.
On February 9, 1982, the Albertville Board issued $7,000,000 of bonds to finance construction and acquisition of the Albertville manufacturing facility and concurrently entered into a lease agreement with Marmon. The lease agreement provided in section 301 that Marmon was to be paid out of the construction fund for the equipment provided to the Board. On February 9, 1982, the Albertville Board paid Marmon for the equipment with funds obtained from the bond sales. It was stipulated that the bonds had not been sold before February 9, 1982, because of high interest rates.
Because the chronology of events dealing with the Cullman project closely resemble those of the Albertville project, they need not also be set out in detail. For the sake of the legal questions here at issue, it is sufficient to say that 1) although Marmon purchased the equipment for the Cullman project after adoption of the resolution authorizing the issuance of bonds, construction of facility, acquisition of equipment, and lease to Marmon, 2) Marmon purchased the equipment, delivered it to the Cullman Board and the Cullman facility became operational all before the Cullman board paid Marmon for the equipment from the bond proceeds.
At the outset, it should be made clear that there are two sets of transactions involved in this case. The first set of transactions consists of retail sales by out-of-state vendors to Marmon. The second set consists of those transactions in which Marmon resold the equipment to the Albertville and Cullman Boards. The Department of Revenue contends that the property purchased in the first set of transactions became subject to use tax when the property came to rest in Alabama for storage, use, or consumption, as provided for in section 40-23-61, Ala. Code (1975). The Department of Revenue has never sought to tax the second set of transactions, viewing them as sales to tax-exempt entities.
A general discussion of use taxes puts our resolution of this issue into a proper perspective. In the enactment of the sales and use tax statutes, it was the underlying purpose and intent of the legislature to impose a tax upon the "ultimate consumer" of the goods purchased, with the tax being based upon the amount of the gross receipts of retailer to consumer. The *Page 801 
sales tax statutes apply to retail sales or purchases taking place within the state; the use tax statutes apply to goods purchased at retail outside of the state and brought into the state for use by the purchaser. The sales tax and use tax statutes are complementary and are to be construed in pari materia — an exemption from sales tax would be equally an exemption from use tax. State v. Thiokol Chemical Corp.,46 Ala. App. 558, 246 So.2d 447 (1970), aff'd, 286 Ala. 739,246 So.2d 454 (1971).
Under section 40-23-61 (a), all purchases of tangible personal property are deemed to be at retail, and are therefore subject to the use tax, unless the purchase is a wholesale sale as defined in section 40-23-60 (4), Ala. Code (1975). If the purchase is at wholesale, the use tax is, by definition, inapplicable. LepeskaLeasing Corp. v. State Department of Revenue, 395 So.2d 82
(Ala.Civ.App.), cert. denied, 395 So.2d 85 (Ala. 1981).
Concentrating only upon the first set of transactions discussed above, the issue on this appeal is the applicability of the Department of Revenue's interpretative regulation G27-916 which provides as follows:
 "An industrial development board created by an incorporated municipality within the State of Alabama under the Cater Act, Section 11-54-80/101, Code of Alabama 1975 as amended, would be exempt from sales and/or use tax on any tangible personal property purchased by the board or its duly authorized agent provided the purchases are made in the name of the board, the board's credit is obligated and said purchases are paid for by the board with funds belonging to the board. The term `funds belonging to the board' shall normally be construed to mean those funds not exceeding the amount of the long term revenue bonds and any temporary borrowing evidenced by revenue bonds or notes maturing not later than 18 months from date of issue. "Under the Alabama Sales and Use Tax Laws, this exemption would not apply to a contractor where the contractor has a construction contract to furnish all materials and labor for use in the performance of the contract. The contractor is the consumer thereof of all materials used in the performance of the construction contract which becomes part of real property. A contractor may purchase items of machinery or equipment not becoming part of the realty, tax exempt, where such items are intended for resale to the board in the form of tangible personal property."
(Emphasis added.) Marmon contends that its purchases from out-of-state vendors are tax-exempt "sales for resale" because of the emphasized portion of G27-916.
The State contends that Marmon cannot avail itself of the exemption outlined in G27-916 because Marmon is not a contractor. It argues that the Boards' resolutions authorizing Marmon to make certain purchases and to act as Board agent do not rise to the level of contracts and that the lease agreement — the only written contract Marmon might rely upon — was entered into well after the equipment purchases were made.
In the case of State v. Montgomery Woodworks, Inc.,389 So.2d 510 (Ala.Civ.App.), cert. denied, 389 So.2d 513 (Ala. 1980), this court discussed the term "contractor," defining it as "(1) one who formally undertakes to do anything for another; (2) one who contracts to furnish a product or service to another; or (3) one who undertakes to supply labor and materials for specific improvements under a contract with an owner or principal." Id. at 511-12. After having reviewed the evidence, we find that the trial court did not err in taking the Boards' resolutions and Marmon's resolutions together as sufficient evidence of a formal undertaking by Marmon to furnish the equipment and machinery here involved. The trial court did not err in discounting the fact that the only written evidence of a contract post-dated the purchases by Marmon.
The State's second contention is that Marmon does not come within G27-916 because it did not originally intend to resell the equipment purchased. This argument *Page 802 
is based upon the fact that the two facilities became fully operational and Marmon commenced its operations as lessee and used the purchased equipment before the Boards actually paid Marmon for the equipment. To support this argument the State cites Hamm v. Boeing Co., 283 Ala. 310, 216 So.2d 288 (1968),appeal dismissed, 394 U.S. 320, 89 S.Ct. 1194, 22 L.Ed.2d 308
(1969). In Boeing the court refused to allow an exemption based upon a "sale for resale" when the facts established that the Boeing Company used the items procured for its own purposes for at least a brief period of time before resale. Id.
216 So.2d at 297.
The Boeing case is distinguishable because the capacity of the use before resale in Boeing differed from that involved here. InBoeing the use of items purchased was incidental to research and development work undertaken by Boeing in its role as contractor. However, in the instant case, the evidence established that Marmon did not use the goods in the role of contractor/vendor of that equipment, but instead subsequently in the role of lessee of the plant.
Substance, not form, must govern the determination of tax matters. Rust Engineering Co. v. State, 286 Ala. 589,243 So.2d 695 (1971). The facts here clearly establish that the use of the plant equipment by Marmon which predated payment for the equipment by the Boards was in its role as a lessee of the equipment and not as the original contractor/vendor and was precipitated only because the bond market did not favor an earlier issuance of the bonds. Under these circumstances, the trial court did not err in disregarding this use and in finding that Marmon did in fact intend to resell the equipment.
The decision below is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.